819 A.2d 467

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JOSE DE LA HOYA, DEFENDANT, AND ALLEGHENY CASUALTY COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 25, 2003—Decided April 7, 2003.

Before Judges PRESSLER, CIANCIA and HOENS.

*Richard P. Blender,* attorney for appellant.

*Frederick J. Schuck,* Camden County Counsel, (*Donna M. Whiteside,* Assistant County Counsel, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Allegheny Casualty Company, the corporate surety which posted a $27,500 bail bond to assure the appearance of defendant Jose de la Hoya, appeals from the order granting it partial remission of the declared forfeiture. Allegheny asserts that under the circumstances, the fifty percent remission allowed by the trial court was so inadequate as to have constituted a mistaken exercise of the court's equitable power. We agree, and since we have already remanded this matter for findings once before, we now opt to exercise our original jurisdiction, *R.* 2:10-5, and fix the amount of remission at eighty percent or $22,000. We remand to the trial court for entry of a conforming order.

These are the facts. Allegheny posted bail for defendant in the amount of $27,500 on December 14, 1999. According to the certification of Richard Sparano, a licensed bailbondsman employed by Allegheny, his office followed its regular supervisory procedures upon defendant's release, requiring him to report in person or by telephone weekly and conducting random checks of defendant at his home and place of employment to assure his availability in court when required. According to Sparano, defendant did in fact make required court appearances following his release and until his unexpected non-appearance at a scheduled

court proceeding on February 16, 2001. None of these assertions, made in support of the remission motion, were disputed by competent evidence by the County, which contested the remission application.[1]

When defendant failed to appear, an order was entered forfeiting the bail. Sparano was promptly notified and thereupon undertook an extensive search to locate him, assigning investigators to the search and conducting surveillances of likely locations in the county. Annexed to Sparano's certification were the detailed reports of his investigators, R.J.C. Investigations and National Fugitive Recovery Agency, describing their continuous and aggressive efforts to find and recapture defendant until he was finally located, apprehended, and surrendered on May 31, 2001, about three and a half months following his non-appearance. There is nothing in this record respecting the efforts of law enforcement authorities to locate defendant during this period. Nor is there any suggestion that between the time of his failure to appear and his recapture by the surety he was arrested for any new crime.

Allegheny moved for vacation of the forfeiture or remission after defendant's surrender. The trial court granted remission of fifty percent and Allegheny appealed. We remanded for findings of fact supporting the trial court's decision. On remand, however, the judge, although he cited applicable case law and referred to

---

[1] At the remand hearing we had ordered, county counsel, although not having filed any answering certifications, represented to the court that she had the prosecutor's file on the criminal charges and she surmised, because the discovery materials that would normally have been given to defendant were still in the file, that he had made no prior court appearance. She further contended that if Sparano's affidavit were inaccurate with respect to its assertions of required court appearances, the accuracy of his assertion of post-release monitoring was also thereby impugned. We cannot, however, regard these speculations and representations as competent evidence in rebuttal of Sparano's certification. We think it plain that if county counsel had the prosecutor's file, she could have ascertained therefrom whether there had been any prior scheduled appearances and, if so, whether defendant had appeared, and should have presented that information to the court by competent affidavit complying with *R.* 1:6-6.

some of the factors informing the remission decision, again failed to explain his decision or indicate how the relevant factors led him to a fifty percent remission decision. Allegheny again appealed.

The framework of the law governing forfeiture and remission of bail is set forth in *R.* 3:26–6, as relaxed by Supreme Court orders entered on November 1, 2000, and June 11, 2002. In brief, *R.* 3:26–6(a) provides that upon the breach of a condition of bail, the court on its own motion shall declare a forfeiture, and absent an objection by the surety seeking to set the forfeiture aside, a judgment of forfeiture shall be entered within 75 days after the declaration of forfeiture. Paragraph (b) permits the court to "direct that a forfeiture be set aside if its enforcement is not required in the interest of justice upon such conditions as it imposes." And paragraph (c) requires the judgment of forfeiture to be entered following the prescribed 75 days if an objection has not been made, but further authorizes the court, after judgment is entered, to remit the bail to the surety in whole or in part "in the interest of justice."

It is clear that the decision to remit and the amount of the remission lies within the equitable discretion of the court to be exercised in the public interest. *See, e.g., State v. Peace,* 63 *N.J.* 127, 129, 305 *A.*2d 410 (1973); *State v. Mercado,* 329 *N.J.Super.* 265, 271, 747 *A.*2d 785 (App.Div.2000); *State v. Childs,* 208 *N.J.Super.* 61, 64, 504 *A.*2d 1212 (App.Div.), *certif. denied,* 104 *N.J.* 430, 517 *A.*2d 423 (1986). And while the court rule does not prescribe standards informing that exercise of discretion, the courts have addressed the factors which should be considered. Thus, in *State v. Hyers,* 122 *N.J.Super.* 177, 180, 299 *A.*2d 748 (App.Div.1973), we listed a number of relevant considerations, including the corporate status of the surety, the surety's supervision of defendant while released on bail, the surety's efforts to ensure the fugitive's return, the length of time between the fugitive's non-appearance and return, both the prejudice to the State and the expenses incurred by it resulting from the fugitive's non-appearance, recapture, and enforcement of the forfeiture, and whether reimburse-

ment of the State's expenses will adequately satisfy the interests of justice. The *Hyers* list is not exhaustive. There are other overarching concerns. Paramount among them is the necessity of providing an incentive to the surety to take active and reasonable steps to recapture a fugitive defendant. Beyond that, if remission were unreasonably withheld, corporate sureties might be overcautious in their willingness to post bail, resulting in an impairment of an accused's constitutional right to pretrial bail. We are also satisfied that the amount of the posted bail is a factor to be considered. That is to say, in determining the amount of a partial remission, the court should take into account not only an appropriate percentage of the bail but also its quantum. Illustratively, fifty percent of a $100,000 bond is a very different matter from fifty percent of a $5,000 bond.

We further point out that while *Hyers* enumerated the factors to be considered, it did not suggest how they should be weighed. We addressed that balancing in *State v. Mercado, supra,* at 271, 747 *A.*2d 785, explaining that "the court's primary focus, especially when the defendant has remained a fugitive for a significant period of time, should be upon the surety's efforts to secure the defendant's return, rather than upon the expenses incurred by the State as a result of the defendant's failure to appear or the prejudice to the State's case caused by defendant's absence." Thus we held that the surety seeking remission "bears a heavy burden to show that it has satisfied its essential obligation under the recognizance to secure the defendant's return to custody...." *Ibid.*

Applying these principles here, we are persuaded that the surety bore its heavy burden and, significantly, that the State did not demonstrate any special or individualized negative considerations. We recognize that although the State failed to adduce any proof of actual expenses or actual prejudice incurred by it, there is, nevertheless, "an intangible element of injury to the public interest where a defendant deliberately fails to make an appearance in a criminal case." *State v. Peace, supra,* 63 *N.J.* at

129, 305 *A.*2d 410. We also think it plain that a significant element of intangible injury to the public is whether defendant committed another crime while a fugitive. Clearly the length of time of defendant's absence is also a component of intangible injury. But the intangible injury here, in view of the surety's asserted degree of supervision, its documented successful efforts in recapturing defendant and defendant's freedom from rearrest while a fugitive, cannot reasonably account for fifty percent or $13,750 charged to the surety even though defendant was at-large for a protracted period. We find that $5,500, the difference between the posted bail and eighty percent thereof, is ample compensation to the State for its intangible injuries as enhanced by the period of defendant's absence.

We add an additional caution. In considering remission applications, the trial court must not only take into account the relevant factors but must also explain how it weighed them. We do not intend to suggest a weighted formula applicable to all cases. We do, however, hold that where the surety has made reasonable supervision efforts and has effected recapture by its own efforts, the period of absence is within reasonable limits, and the only negative consideration is the intangible injury to the public, which does not include, in a particular case, the fugitive's commission of another crime while absent, the remission should be substantial.

The order appealed from is reversed and we remand for entry of an order consistent with this opinion.