875 A.2d 1025 (2005)
378 N.J. Super. 355
STATE of New Jersey, Plaintiff-Respondent,
v.
Andres RAMIREZ, Defendant, and
Sirius America Insurance Company, as surety, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Manuel Felton, Defendant, and
Sirius America Insurance Company, as surety, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Antonio Dos Santos, Defendant, and
Sirius America Insurance Company, as surety, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 2005.
Decided June 20, 2005.
*1027 Ted Del Guercio argued the cause for appellants (Samuel M. Silver, attorney; Mr. Silver and Mr. Del Guercio, on the brief).
Christopher J. Kane argued the cause for respondent (David S. Lafferty, attorney; Mr. Kane, of counsel and on the brief).
Before Judges KESTIN, ALLEY and FALCONE.
The opinion of the court was delivered by
FALCONE, J.A.D.
In each of these three appeals, which we consolidate for purposes of this opinion, Sirius America Insurance Company (Sirius or the surety), a corporate surety authorized to underwrite bail bonds in this State, appeals from a bail forfeiture order entered by the Law Division, Bergen County. Sirius asserts that the trial court erred in its application of principles governing remission of forfeited bail. In Ramirez and Felton, the surety appeals from an order remitting a portion of the forfeited bail, alleging that the trial court failed to consider all of the governing principles. In Dos Santos, Sirius appeals from an order denying its motion for remission following the entry of a default judgment of forfeiture against it.
Because the surety had failed, in Ramirez and Felton, to meet its burden of establishing that it had: (1) made reasonable efforts to locate and effect the capture of the fugitive defendant; and (2) adequately supervised the defendant while he was released on bail, we affirm. In effect, Sirius failed to make a prima facie showing in these cases that it was entitled to a greater remission. In Dos Santos, since Sirius failed to prove by competent evidence that the defendant was no longer a fugitive, we affirm.
The following are the pertinent facts in each of the three cases.

I.

State v. Andres Ramirez
On November 30, 2002, Sirius posted a bail bond in the amount of $150,000 for the release of Andres Ramirez from the Bergen County Jail. When Ramirez failed to appear for arraignment on June 30, 2003, a bench warrant was issued and a forfeiture of the bail was ordered. On July 7, 2003, notice was sent to the surety as required by R. 3:26-6(a) and Administrative Directive # 13-04. As required by the court rule and directive, the notice advised that failure to satisfy the forfeiture or file a motion to vacate the forfeiture *1028 within seventy-five days of the date of the notice of forfeiture would result in the entry of a judgment and removal of the surety's name and the names of all of its bail agents from the Bail Registry until satisfaction was made.
On or about September 18, 2003, after a default judgment had been summarily granted, R. 3:26-6(c), counsel for Sirius filed a motion to vacate the judgment, exonerate the surety and discharge the bond. Attached to the motion papers was the affidavit of Sandy Shull, the Recovery Coordinator for the Program Administrator to the surety, in which the affiant advised that she learned on September 11, 2003 that Ramirez had been in the Passaic County Jail, having been arrested two days earlier "for a domestic dispute and [for] giving a false name to the police department." Shull further advised that Ramirez had been instructed: (1) to maintain regular contact with the surety by phone, by mail or by written correspondence; (2) to appear in court for every scheduled court event; and (3) to check in with the posting agent on a weekly basis. Shull did not, however, indicate when Ramirez had been so advised or who had spoken with him about these responsibilities. Moreover, Shull did not indicate what action had been taken by a representative of the surety to produce Ramirez for all court proceedings and to supervise him while he was released on bail as required by the terms of the recognizance. Finally, Shull did acknowledge that a review of the surety's records revealed that Ramirez had "failed to contact the field office as required", but offered no explanation as to what the surety or any of its representatives did to ensure Ramirez's compliance with the written conditions of the recognizance.
When the motion was heard on January 27, 2004, Judge Meehan forfeited $25,000 of the bail, an amount that represents 16.7 percent of the posted bail, because Ramirez had been "gone for a short period of time but not too long." By order dated January 27, 2004, the motion judge directed the Bergen County Finance Manager to "vacate the bail forfeiture and discharge the bond, upon payment of $25,000 ...", thus, remitting $125,000, slightly more than eighty-three percent of the bond, to the surety. The form order placed Sirius on notice that
failure to satisfy this judgment will result in removal of the names of all the corporate surety company's licensed insurance producers, limited insurance representatives and limited lines insurance producers from the Bail Registry maintained by the Clerk of the Superior Court pursuant to Rule 1:13-3, until such time as this judgment has been satisfied.
In effect, Sirius was advised that it and its agents would no longer have authority to write bails in this State until such time as the judgment was satisfied.
Sirius filed a timely notice of appeal and motion to stay the proceedings or set a supersedeas bond amount as authorized by R. 2:9-6(c), which provides, in pertinent part, that "[s]imultaneous with the filing of [a] notice of appeal in respect of a bail forfeiture judgment by or on behalf of an insurer, the appellant shall deposit the full amount of the judgment with the Clerk of the Superior Court in cash or by certified, cashiers or bank checks", but that the court "for good cause shown may allow the posting of a supersedeas bond in lieu of the cash deposit." By order dated May 12, 2004, we denied the surety's motion to stay the proceedings or set a supersedeas bond. See N.J.S.A. 17:31-12 (the "good cause" required for the posting of a supersedeas bond by a surety company filing an appeal from a judgment entered against it *1029 to enforce the forfeiture of a bail does not mean "an application by a surety to extend the time to forfeit a bond, to stay payment of a forfeiture of default judgment, or to extend the time to locate a defendant").

II.

State v. Manuel Felton
On October 3, 2002, Sirius posted a bail bond in the amount of $75,000 for the release of Manuel Felton from the Bergen County Jail. When Felton failed to appear for sentencing on August 22, 2003, a bench warrant was issued and a forfeiture of the bail was ordered. The notice to surety required by court rule and administrative directive was sent three days later. See R. 3:26-6(a) and Administrative Directive # 13-04.
On or about October 6, 2003, a member of the Bergen County Prosecutor's Fugitive Squad located Felton in the Passaic County Jail, where he was being held on new criminal charges.
Thereafter, it appears that a default judgment was summarily granted by Judge Meehan, R. 3:26-6(c), since the surety had failed to satisfy the forfeiture or file a motion to vacate the forfeiture within seventy-five days of the notice. Counsel's subsequent motion to vacate the judgment, exonerate the surety and discharge the bond was heard by Judge Meehan on January 27, 2004. It appears that Sirius did not provide the court with any evidence of its compliance with the standard conditions of the recognizance or any evidence of its efforts to locate Felton. Since Felton had been "involved in more criminal activity", Judge Meehan "set [the amount to be paid by the surety] at $10,000." It appears that the dollar amount referenced in the transcript is in error, since the order of January 27, 2004 clearly indicates that the bail forfeiture would be vacated and the bond discharged "upon payment of $15,000", an amount that represents 20 percent of the posted bail. Moreover, in its appellate brief and appendix, Sirius concedes that the amount is $15,000.
Notwithstanding a remittance of $60,000, an amount which is eighty percent of the original bond, the surety filed a timely notice of appeal and a motion to stay the proceedings or set a supersedeas bond amount. R. 2:9-6(c). The motion was denied by Judge Meehan. By order dated May 12, 2004, we denied the surety's motion to stay the proceedings or set a supersedeas bond. Subsequently, in an order dated August 10, 2004, Sirius was directed to deposit $15,000 with the Clerk of the Superior Court in order "to secure the appeal... pending its outcome", as required by R. 4:57-2(a).

III.

State v. Antonio Dos Santos
On June 22, 2002, Sirius posted a bail bond in the amount of $200,000 for the release of Antonio Dos Santos from the Bergen County Jail. When the defendant failed to appear for a scheduled status conference on October 21, 2002, a bench warrant was issued and a forfeiture of the bail was ordered. On November 6, 2002, a notice of the forfeiture was sent to the surety as required by R. 3:26-6(a) and Administrative Directive # 13-04. The form notice advised that failure to satisfy the forfeiture or file a motion to vacate the forfeiture within seventy-five days of the date of the notice of forfeiture would result in the entry of a judgment and removal of the surety's name and the names of all of its bail agents from the Bail Registry until satisfaction was made. Upon receipt of the notice, the surety assigned a recovery agent to locate and apprehend Dos Santos.
*1030 On February 19, 2003, Judge Meehan summarily entered a default judgment under R. 3:26-6(c). Days later a notice was sent to Sirius, which advised that if it failed to satisfy the judgment, and until satisfaction was made, its name and the names of any of its agents would be removed from the Bail Registry.
On September 3, 2003, counsel for Sirius filed a motion to vacate the judgment, exonerate the surety and discharge the bond. In support of the motion, counsel submitted: (1) an affidavit of the assigned recovery agent, which indicated that Dos Santos had died; (2) a faxed copy of a Brazilian death certificate; and (3) an English translation of the faxed copy, which indicated that an Antonio Padroeiro Dos Santos Filho died in Brazil on April 4, 2003, from cranial trauma.
The motion was scheduled for September 18. At that time, and based on the State's objection to the motion, Judge Meehan granted the surety's request for an adjournment in order to authenticate the purported death certificate. On two separate occasions over the next four months, additional adjournment requests by the surety were granted, since both Sirius and the Fugitive Squad of the Bergen County Prosecutor's Office were unable to authenticate the death certificate.
On February 24, 2004, Judge Venezia heard the matter. After denying the surety's application for a further adjournment, the motion judge denied the motion to vacate the forfeiture. A confirming order was entered that date. A timely notice of appeal was filed. Thereafter, we denied the surety's motion to stay the proceedings or set a supersedeas bond. See N.J.S.A. 17:31-12 and R. 2:9-6(c).

IV.
On appeal, Sirius advances the following arguments in all three cases:
POINT I.
THE TRIAL COURT ERRED IN FAILING TO CONSIDER ALL OF THE EQUITABLE FACTORS SET FORTH IN THE CASE LAW PERTAINING TO VACATING A FORFEITURE BEFORE MAKING ITS DETERMINATION.
POINT II.
THE TRIAL COURT ERRED IN APPARENTLY CONSIDERING ONLY ONE OF THE EQUITABLE FACTORS REGARDING REMISSION AND VACATION TO THE EXCLUSION OF ALL OTHERS.
POINT III.
THE TRIAL COURT ERRED IN FAILING TO ARTICULATE ITS CONSIDERATION OF THE REQUIRED FACTORS ON THE RECORD.
In two of the cases, Ramirez and Dos Santos, the surety makes the following additional argument:
POINT IV.
A SUBSTANTIAL FORFEITURE OF 80 PERCENT OR MORE IS NOT REQUIRED PURSUANT TO STATE v. HARMON.

V.
The framework of the law governing forfeiture and remission of bail is set forth in R. 3:26-6. In State v. de la Hoya, 359 N.J.Super. 194, 198, 819 A.2d 467 (App.Div.2003), we summarized the process as follows:
In brief, R. 3:26-6(a) provides that upon the breach of a condition of bail, the court on its own motion shall declare a forfeiture, and absent an objection by *1031 the surety seeking to set the forfeiture aside, a judgment of forfeiture shall be entered within 75 days after the declaration of forfeiture. Paragraph (b) permits the court to "direct that a forfeiture be set aside if its enforcement is not required in the interest of justice upon such conditions as it imposes." And paragraph (c) requires the judgment of forfeiture to be entered following the prescribed 75 days if an objection has not been made, but further authorizes the court, after judgment is entered, to remit the bail to the surety in whole or in part "in the interest of justice."
Paragraph (b) was amended, effective September 2004, to make clear that the setting aside of a forfeiture judgment may be in whole or in part and may be ordered before or after the judgment is entered. Pressler, Current N.J. Court Rules, comment 2 on R. 3:26-6 (2005).
The decision whether to remit and the amount of the remission "lies within the equitable discretion of the court to be exercised in the public interest." de la Hoya, supra, 359 N.J.Super. at 198, 819 A.2d 467. See also State v. Peace, 63 N.J. 127, 129, 305 A.2d 410 (1973)("the matter of remission lies essentially in judicial discretion").
In State v. Hyers, 122 N.J.Super. 177, 180, 299 A.2d 748 (App.Div.1973), we determined that the factors that should be considered by the court when a motion for remission has been made include:
(a) whether the applicant is a commercial bondsman; (b) the bondman's supervision, if any, of defendant during the time of his release; (c) the bondman's efforts to insure the return of the fugitive; (d) the time elapsed between the date ordered for the appearance of defendant and his return to court; (e) the prejudice, if any, to the State because of the absence of defendant; (f) the expenses incurred by the State by reason of the default in appearance, the recapture of the fugitive and the enforcement of the forfeiture; (g) whether reimbursement of the expenses incurred in (f) will adequately satisfy the interests of justice.
Our Supreme Court has stated that the Hyers factors are "appropriate for consideration" on a motion for remission. Peace, supra, 63 N.J. at 129, 305 A.2d 410.
In addition to the Hyers factors, a trial court considering a motion for remission should consider the "intangible element of injury to the public interest in almost any case where a defendant deliberately fails to make an appearance in a criminal case." Peace, supra, 63 N.J. at 129, 305 A.2d 410. A "significant element of the State's intangible injury" is the commission of another crime by the fugitive defendant. State v. Harmon, 361 N.J.Super. 250, 255, 825 A.2d 515 (App.Div.2003). The motion judge should also consider the overarching concerns of "the necessity of providing an incentive to the surety to take active and reasonable steps to recapture a fugitive defendant", because "if remission were unreasonably withheld, corporate sureties might be overcautious in their willingness to post bail, resulting in an impairment of an accused's constitutional right to pretrial bail." de la Hoya, supra, 359 N.J.Super. at 199, 819 A.2d 467.
Once a defendant who is released on bail fails to make a scheduled court appearance, "[i]t is defendant's and the surety's burden to prove that it would be inequitable to insist upon [the] forfeiture and that forfeiture is not required in the public interest." State v. Childs, 208 N.J.Super. 61, 64, 504 A.2d 1212 (App.Div.), certif. denied, 104 N.J. 430, 517 A.2d 423 (1986); State v. Poon, 244 N.J.Super. 86, 97, 581 A.2d 883 (App.Div.1990). See *1032 also State v. Fields, 137 N.J.Super. 76, 81, 347 A.2d 810 (App.Div.1975)(once the State establishes that defendant did not appear and that his bail was forfeited, it becomes the burden of the surety and defendant "to prove that it was inequitable to insist on the forfeiture and that forfeiture was not required in the interest of justice"). In this regard, we have held that the surety seeking remission "bears a heavy burden to show that it has satisfied its essential obligation under the recognizance to secure the defendant's return to custody...." State v. Mercado, 329 N.J.Super. 265, 271, 747 A.2d 785 (App.Div.2000). In fact, the motion judge should "focus" on the surety's efforts to secure the return of the fugitive defendant. Ibid. We are satisfied that an equally important factor that the motion judge should focus on is the degree of the surety's supervision of the defendant while he or she is free on bail. See Harmon, supra, 361 N.J.Super. at 255, 825 A.2d 515 (in addition to the primary consideration of whether the surety had made reasonable efforts under the circumstances to effect the recapture of the fugitive defendant, the motion judge should consider the "particularly significant" factor of "the surety's supervision of the defendant while he is released on bail").
In June 2003, we decided three cases, Harmon, supra; State v. Dillard, 361 N.J.Super. 184, 824 A.2d 1100; and State v. Clayton, 361 N.J.Super. 388, 825 A.2d 1155. In each case, we had consolidated a number of bail forfeiture appeals and, after exercising original jurisdiction and applying the principles set forth herein, vacated most of the trial court orders and remanded those matters for entry of orders consistent with the remission granted. These cases set parameters for remission of bail in certain circumstances.
On November 17, 2004, as a result of certain legislative changes, rule amendments, and the trilogy of cases decided in June 2003, Administrative Directive # 13-04, entitled "Revision to Forms and Procedures Governing Bail and Bail Forfeitures" was promulgated. Attachment F of the directive includes remission guidelines. Although these guidelines were distributed subsequent to the entry of the orders under appeal, we reproduce them in their entirety because of their relevance to a discussion of the issues presented on these appeals.
GUIDELINES
The following are a broad set of guidelines that have been developed to provide judges with a starting point when determining whether to grant a remission, and, if so, the amount to remit. Obviously, the particular facts in an individual case will determine whether the amount to remit is increased or decreased. The genesis for developing some of the guidelines was derived from recent Appellate Division decisions.
WHERE DEFENDANT IS A FUGITIVE WHEN REMISSION MOTION IS MADE
No Remission
Where the defendant remains a fugitive when the remission is made, the essential undertaking of the surety remains unsatisfied, and the denial of any remission is entirely appropriate. State v. Harmon, 361 N.J.Super. at 255, 825 A.2d 515.
WHERE DEFENDANT IS NOT A FUGITIVE WHEN REMISSION MOTION IS MADE
AND
DEFENDANT DID NOT COMMIT A NEW CRIME WHILE A FUGITIVE

*1033 Minimal Remission

Where the surety provided minimal or no supervision while the defendant was out on bail and failed to engage in immediate substantial efforts to recapture the defendant, minimal remission is warranted subject to the weighing of the factors previously identified [in the introductory paragraphs of the attachment, which reference the following cases: Childs, de la Hoya, Harmon, Hyers, Mercado, and Peace].
REMISSION GUIDELINE:
State is reimbursed its cost.
If time at large 6 months or less 20% of the balance remitted
If time at large between 6-48 months 5% to 20% of balance remitted
If time at large over 48 months 0% to 5% of balance remitted
Partial Remission
Where the surety provided minimal or no supervision while the defendant was out on bail but did engage in immediate substantial efforts to recapture the defendant;
or
Where the surety provided close supervision while the defendant was out on bail but did not engage in immediate substantial efforts to recapture the defendant;
Partial remission is warranted subject to the weighing of the factors previously identified.
REMISSION GUIDELINE:
State is reimbursed for its costs.
If time at large is 6 months or less 75% of the balance remitted
If time at large between 6-48 months 20% to 75% of the balance remitted
If time at large over 48 months 0% to 20% of the balance remitted
Substantial Remission
Where the surety provided close ongoing supervision while the defendant was out on bail and made immediate substantial efforts to recapture the defendant, substantial remission is warranted subject to the weighing of the factors previously identified.
REMISSION GUIDELINE:
Surety is reimbursed for its costs. State is reimbursed for its costs.
If time at large 6 months or less 95% of the balance remitted
If time at large between 6-48 months 75% to 95% of the balance remitted
If time at large over 48 months 0% to 75% of balance remitted
WHERE DEFENDANT NOT A FUGITIVE WHEN REMISSION MOTION MADE
AND
DEFENDANT DID COMMIT A NEW CRIME WHILE A FUGITIVE
Minimal Remission
Where the surety provided minimal or no supervision while the defendant was out on bail and failed to engage in immediate substantial efforts to recapture the defendant, minimal remission is warranted subject to the weighing of the factors previously identified.
REMISSION GUIDELINE:
State is reimbursed its costs.
If time at large 12 months or less 10% of the balance remitted

*1034 If time at large over 12 months 10% to no remission
Partial Remission
Where the surety provided minimal or no supervision while the defendant was out on bail but did engage in immediate substantial efforts to recapture the defendant;
or
Where the surety provided close supervision while the defendant was out on bail but did not engage in immediate substantial efforts to recapture the defendant;
Partial remission is warranted subject to the weighing of the factors previously identified.
REMISSION GUIDELINE:
State is reimbursed for its costs.
If time at large 6 months or less 40% of the balance remitted
If time at large between 6-48 months 10% to 40% of the balance remitted
If time at large over 48 months 0% to 10% of the balance remitted
Substantial Remission
Where the surety provided close ongoing supervision while the defendant was out on bail and made immediate efforts to recapture the defendant, substantial remission is warranted subject to the weighing of the factors previously identified.
REMISSION GUIDELINE:
Surety is reimbursed for its costs. State is reimbursed for its costs.
If time at large 6 months or less 60% of the balance remitted
If time at large between 6-48 months 40% to 60% of the balance remitted
If time at large is over 48 months 0% to 40% of the balance remitted

VI.

Ramirez and Felton
In Ramirez, as noted, the bench warrant was issued and bail forfeiture declared on June 30, 2003, when defendant failed to appear for arraignment, a scheduled court event. On September 11, 2003, the surety's agent discovered somehow that defendant had been arrested two days earlier on new criminal charges and was being held in the Passaic County Jail. The affidavit presented in support of the surety's motion for exoneration offered no additional information as to what steps, if any, had been taken by the surety or its agents to locate and recapture the defendant and offered no information at all as to what, if any, proactive steps had been taken to monitor and supervise Ramirez before he became a fugitive. Despite the surety's apparent lack of due diligence, Judge Meehan granted a remission of $125,000, which represents slightly more than eighty-three percent of the original bail bond.
In Felton, as noted, the bench warrant was issued and a forfeiture of the bail ordered on August 22, 2003, when defendant failed to appear for sentencing. On October 6, 2003, a member of the Bergen County Prosecutor's Office, not the surety or any of its agents, discovered that defendant was being held in the Passaic County Jail on new criminal charges. Although counsel for the surety provided no information in support of its motion for exoneration as to any efforts made by it or any of its agents to locate and recapture defendant and made no representations as to whether defendant had been monitored and supervised prior to August 22, Judge Meehan granted remission of $60,000, *1035 which represents eighty percent of the original bail bond.
In these two cases, there clearly appears to have been no effort (Felton) or, at best, very little effort (Ramirez) by the surety to effect the recapture of the fugitive defendant, and an appalling lack of supervision in both prior to defendant's failure to appear at a scheduled court event. In these circumstances, we discern no misapplication of discretion in the award of partial remission and no error in Judge Meehan's omission to address other factors, since the surety failed to make a prima facie showing of entitlement to a greater amount. We do suggest, however, that the better practice, especially in light of the remission guidelines, is for the motion judge to make a more comprehensive record, including an explanation of what additional factors were considered and, if none were considered, a statement of the ways in which the surety has failed to present a prima facie basis for relief.
Applying the remission guidelines promulgated as part of Administrative Directive # 13-04, it is clear in both cases that: (1) the defendant was not a fugitive when the motion for relief was filed; (2) the defendant had committed a new crime while a fugitive; (3) the defendant was at large for less than twelve months; (4) the surety provided "minimal or no supervision while the defendant was out on bail"; and (5) the surety "failed to engage in immediate substantial efforts to recapture the defendant." In these circumstances, there is no adequate basis upon which the surety may challenge the trial court's discretion in the amount of remission awarded.

VII.

Dos Santos
In this case, we are satisfied that the surety was given ample opportunity to prove that Dos Santos had died. Having failed to establish that defendant was no longer a fugitive, Sirius was not entitled to relief under both pre-and post-guidelines standards. Harmon, supra, 361 N.J.Super. at 255, 825 A.2d 515.

VIII.
The orders appealed from are affirmed.