909 A.2d 1173 (2006)
388 N.J. Super. 620
STATE of New Jersey, Plaintiff-Respondent,
v.
Mark RUCCATANO, Defendant, and
Lexington National Insurance Company, Surety.
Eastern Bail Bond Agency, Inc., Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 2006.
Decided November 17, 2006.
*1174 Michael B. Lavery, Hackettstown, argued the cause for appellant (Sirkis & Lavery, attorneys; Kevin C. Decie, of counsel and on the brief).
W. Randall Bush, First Assistant Morris County Counsel, argued the cause for respondent (Ronald Kevitz, Morris County Counsel, attorney; Mr. Bush, on the brief).
Before Judges KESTIN,[1] WEISSBARD and PAYNE.
The opinion of the court was delivered by
WEISSBARD, J.A.D.
Eastern Bail Bond Agency, Inc. (Eastern) appeals from an October 11, 2005 Order of Partial Bail Forfeiture and Partial Remission of Bail. Eastern posted a $2500 bail bond for defendant Mark Ruccatano, *1175 which was forfeited when Ruccatano failed to appear for a scheduled court date. On Eastern's motion, the Law Division judge remitted ten percent of the bond, resulting in an order that Eastern pay $2250 to the County of Morris. We conclude that the judge improperly interpreted the Remittitur Guidelines governing partial remission of forfeited bail bonds. Accordingly, we reverse.
The facts are simple and essentially undisputed. Ruccatano was charged in a complaint with possession of heroin. On or about September 5, 2004, Eastern posted a bond for Ruccatano in the amount of $2500. Defendant was scheduled to appear for a pre-indictment conference on October 25, 2004; he did not appear, and a bench warrant was issued. In an affidavit submitted to the Law Division, Eastern's President asserted that the agency "was never notified of a Court date for the defendant" and "was not notified of the bail forfeiture until November 22, 2004." Morris County did not submit anything to counter these statements. Once having received notification of the forfeiture and bench warrant, someone from Eastern went to defendant's residence and spoke with his father, who reported that defendant was in the Essex County jail, having been there since November 12, 2004. Eastern verified the information and promptly notified the Morris County Warrant Squad of defendant's location. As a result, a detainer was lodged to insure his appearance in Morris County upon release from confinement. At the time of the remission motion, defendant remained incarcerated in Essex County; Morris County had not incurred any costs to obtain defendant's appearance as of that date.
Concerning its supervision of defendant, Eastern stated that it "advis[ed] the Defendant to notify the Court as they routinely fail to send out notices." At oral argument, Eastern conceded that it had not exercised any additional supervision.
In the wake of our opinions in State v. Dillard, 361 N.J.Super. 184, 824 A.2d 1100 (App.Div.2003) and State v. Clayton, 361 N.J.Super. 388, 825 A.2d 1155 (App.Div. 2003), Administrative Directive # 13-04 was issued on November 17, 2004. Attachment F to that Directive was "Remittitur Guidelines (Superior and Municipal Courts)". We endorsed the use of these Guidelines in State v. Ramirez, 378 N.J.Super. 355, 366-71, 875 A.2d 1025 (App.Div.2005).
Notably, the introduction to the Guidelines emphasizes that:
The following are a broad set of guidelines that have been developed to provide judges with a starting point when determining whether to grant a remission, and, if so, the amount to remit. Obviously, the particular facts in an individual case will determine whether the amount to remit is increased or decreased. The genesis for developing some of the guidelines was derived from recent Appellate Division decisions.
At the outset, the Guidelines set forth two "Policy Concerns To Consider In Determining Remission":
1. The necessity of providing an incentive to the surety to take active and reasonable steps to recapture a fugitive defendant.
2. The fact that if remission were unreasonably withheld, corporate sureties might be overcautious in their willingness to post bail, resulting in an impairment of an accused's constitutional right to pretrial bail.
In support of these policy concerns, the Guidelines cited our opinion in State v. de la Hoya, 359 N.J.Super. 194, 199, 819 A.2d 467 (App.Div.2003).
*1176 Next, the Guidelines set forth eight "Factors To Weigh in Determining Remission," as follows:
1. Whether the surety has made a reasonable effort under the circumstances to effect the recapture of the fugitive defendant.
2. Whether the applicant is a commercial bondsman.
3. The surety's supervision of the defendant while he or she was released on bail.
4. The length of time the defendant is a fugitive.
5. The prejudice to the State, and the expense incurred by the State, as a result of the fugitive's nonappearance, recapture and enforcement of the forfeiture.
6. Whether the reimbursement of the State's expenses will adequately satisfy the interests of justice. The detriment to the State also includes the intangible element of injury to the public interest where a defendant deliberately fails to make an appearance in a criminal case.
7. The defendant's commission of another crime while a fugitive.
8. The amount of the posted bail. In determining the amount of a partial remission, the court should take into account not only an appropriate percentage of the bail but also its amount.
[Citations omitted.]
Finally, the Guidelines explained that there must be a "Balancing of Factors," stating:
The court's primary focus, especially when the defendant has remained a fugitive for a significant period of time, should be upon the surety's efforts to secure the defendant's return, rather than upon the expenses incurred by the State as a result of the defendant's failure to appear or prejudice to the State's case caused by the defendant's absence.
[Citations omitted.]
With these principles in mind, we turn to the case under review.
Here, the parties and the judge focused on the guideline covering those situations where the defendant was not a fugitive when the remission motion was made and the defendant had committed a new crime while a fugitive. Since defendant had been located, he was no longer a fugitive; since he was in jail on a new charge, he clearly had been accused of committing a new crime while in a fugitive status, i.e., after October 25, 2004. In such cases, the Guidelines call for "minimal remission" if the surety "provided minimal or no supervision while the defendant was out on bail and failed to engage in immediate substantial efforts to recapture the defendant." However, even the minimal remission, which amounts to ten percent if, as here, the defendant is at-large for less than twelve months, is "subject to the weighing of the factors previously identified." If the surety provided minimal or no supervision but did engage in immediate substantial efforts to recapture the defendant, the Guidelines call for "partial remission" that, for a defendant at-large for less than six months, amounts to a forty percent remission.
The County argued, and the judge agreed, that Eastern provided "minimal or no supervision." Indeed, Eastern conceded as much when it argued for remission. Thus, the issue was, as the judge correctly observed, whether Eastern engaged in "immediate substantial efforts" to recapture the defendant. As the judge put it: "What does this mean?" The Guidelines themselves provide no explicit definition, and the case law provides no guidance, unless one compares the facts and amount of forfeiture in each case to those in other cases, and to the present case.
*1177 The judge did not deem Eastern's efforts to be either immediate or substantial. We disagree. With respect to immediacy, the judge found that "[i]f they had supervised properly, they would have known a lot sooner that he was in custody, presumably if they took the same efforts." As the comment makes clear, the judge's finding of no immediate effort was based on Eastern's lack of supervision. But that constituted an impermissible form of "double-counting."
The Partial Remission Guidelines potentially applicable here have two distinct elements: the first, in each instance, being that "the surety provided minimal or no supervision,"; and second, that the surety either did or did not "engage in immediate substantial efforts to recapture the defendant." If there is "minimal or no supervision" and the surety "failed to engage in immediate substantial efforts," the Guideline sets the remission at ten percent if the defendant is at-large less than twelve months. On the other hand, if there is minimal or no supervision and the surety did engage in substantial efforts, the Guideline sets remission at forty percent where the defendant is at-large less than six months. Here, the lack of supervision was conceded, thereby satisfying the first prong of each Guideline. It is not fair, and we deem it unacceptable, to use that same lack of supervision to find that the surety's efforts were not "immediate" and therefore did not satisfy the second prong of the Guideline.
We conclude that the immediacy of the surety's efforts should ordinarily be measured from the time the surety is informed of the warrant/forfeiture, without reference to when it would or should have learned of that fact if there had been proper supervision. However, this is not to say that if the surety is informed of the warrant at some point after the defendant's failure to appear and then fails to act on that information, it is to be excused. Such failure would constitute a lack of immediacy. Here, there was no evidence offered that Eastern knew or should have known of defendant's non-appearance sooner than November 22, 2004, the date on which it claimed it did learn. As a result, Eastern's efforts were "immediate," and the judge's finding to the contrary was mistaken.
This leaves the remaining question; whether Eastern's efforts were "substantial." The judge's only finding in this respect was somewhat cryptic:
And whether or not these are substantial efforts isonethat's problematic. Is it enough just to go out to make a field visit? Should they have done some further investigation? That remains to be seen.
But the way the guidelines are set up and the case law hasa prologue to the guidelines developed, it would appear that this does fall into factor of minimal remission.
So, I'm going to grant the application and I'll grant the remission in accordance with minimal remission standards . . . for the reasons I've indicated.
At the outset, we observe that the judge seemed to be of the view that he was bound to remit either ten percent or forty percent, depending on whether he found Eastern's efforts to have been immediate and substantial; if so, the surety would receive forty percent, if not, only ten percent. We disagree with that approach. As we noted earlier, the Guidelines were only intended to provide "a starting point when determining whether to grant a remission, and, if so, the amount to remit." The facts of a particular case "will determine whether the amount to remit is increased or decreased." Thus, flexibility, rather than rigidity, is the governing principle.
*1178 In applying the Guidelines in this flexible manner, the designated factors are to be "weighed." Here, however, the judge did not address, much less weigh, the Guideline factors, other than the inadequate supervision. Reviewing those factors, we note the applicability in Eastern's favor of: (1) the surety being a commercial bondsman; (2) the very brief length of time the defendant was a fugitive; and (3) the absence of any prejudice to the County or expense incurred to recapture the defendant. On the other side are: (1) the small amount of the bail; (2) the defendant's commission of another crime while a fugitive; and (3) the intangible injury to the public. Most importantly, the very first listed factor asks "whether the surety has made a reasonable effort under the circumstances to effectuate recapture of the fugitive defendant" (emphasis supplied). We emphasize the wording of this factor as it relates to and provides content for the phrase "substantial efforts" to which we have alluded earlier and which forms the bone of contention in this dispute.
What constitutes "a reasonable effort" will obviously vary with "the circumstances." Here, there is no doubt that Eastern's efforts were effective in that it accomplished the essential purpose of locating defendant so that he could be returned to Morris County, albeit without much effort. As a result, those efforts were clearly reasonable "under the circumstances." As we view it, reasonable equates with effective. The County, in its appellate brief, continues to focus on Eastern's lack of supervision, a circumstance that, as we have said, is not in dispute. It has failed to address what more Eastern could or should have done to recapture the defendant, perhaps in recognition of the obvious: that the surety's efforts did effectuate his recapture.
Nevertheless, the question remains whether Eastern's efforts, though reasonable, and therefore effective, were substantial. We discern no compelling reason why the word substantial should require some higher burden. As used in the Guidelines, substantial does not relate solely to the quantum of effort required, but to the quality of that effort. In some cases, much effort and expense by the surety may be needed to locate and recapture the errant defendant, while in other cases, as here, only a small effort may lead to the same result. Clearly, it would make no sense to provide a greater remission to a surety whose agents were inefficient and expended more effort to find the defendant while awarding less to the surety whose agents were efficient and accomplished their task with less effort.[2] The primary policy concerns identified by the Guidelines are to provide the surety with an incentive to find and recapture the fugitive.
As a result, we conclude that "substantial" has the same meaning as "reasonable under the circumstances," which we have equated with "effective." Applied to the present case, Eastern's efforts were substantial, and the remission should have been forty percent. An order in conformity with this decision should be entered on remand.
Reversed and remanded.
NOTES
[1] Judge Kestin did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] The dictionary definition of "substantial" supports this view: "Being of considerable importance, value, degree, amount, or extent." Webster's II New College Dictionary, p. 1099 (1995). Thus, whether something is substantial is measured by its significance in a given circumstance.