913 A.2d 130 (2007)
389 N.J. Super. 366
STATE of New Jersey, Plaintiff-Respondent,
v.
Louis TOSCANO, Defendant, and
Safety National Casualty Corporation, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2006.
Decided January 4, 2007.
*132 Samuel M. Silver, argued the cause for appellant.
Donna M. Whiteside, Assistant County Counsel, argued the cause for respondent (Deborah Silverman-Katz, Camden County Counsel, attorney; Ms. Whiteside, on the brief).
Before Judges SKILLMAN, LISA[1] and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
Safety National Casualty Corporation (Safety) posted a bail bond in the amount of $40,000 for defendant Louis Toscano. Safety appeals from an order of July 6, 2005, which remits $8000 and forfeits $32,000 of that bond. Because the trial court did not have the benefit of this court's decision in State v. Ruccatano, 388 N.J.Super. 620, 909 A.2d 1173 (App.Div. 2006), and did not apply the remittitur guidelines issued by the Administrative Director of the Courts or weigh the factors relevant to remission, we remand. See Directive # 13-04, Revision to Forms and Procedures Governing Bail and Bail Forfeitures, Attachment F (2004).
The facts are not in dispute. Safety, a commercial surety, did not provide any information about its efforts to supervise Toscano after posting his $40,000 bond. On October 1, 2004, Toscano failed to appear in court as required. His bail was revoked and a warrant was issued. On October 17, 2004, Toscano was "incarcerated on other matters." On November 8, 2004, the warrant was executed, and Toscano was no longer considered at large. On November 10, 2004, notice of bail forfeiture was issued; it did not advise that Toscano was in custody.
On December 7, 2004, Safety's recovery agent commenced efforts to recapture Toscano by making inquiry of the Camden County Criminal Records. He was told that Toscano was incarcerated and scheduled to appear in court on December 15, 2004.
Safety moved to vacate the forfeiture of the bond on December 14, 2004. The County opposed the application and submitted an affidavit of the Undersheriff, who described the operation and cost of his department's "fugitive recovery" program. No other evidence was presented.
The trial judge found the following. Safety's supervision of Toscano while he was released on bail was "wholly inadequate." Although Toscano was a fugitive for thirty-nine days, "a fairly short period of time," and there was no evidence that he committed a crime while released, Toscano "was already in the custody of Camden County" when Safety made inquiry. Safety failed to demonstrate that it "made any substantial attempt to recapture or to monitor the defendant." There was no prejudice to the State's case and no harm to the public interest beyond the expense and intangible injury associated with every deliberate failure to appear. Relying upon "an overarching public interest that favors rewarding a commercial surety when it has taken any step towards the recapture of the defendant," the judge determined that *133 a "twenty percent remission" was "fair to all parties involved."
Although "the decision to remit bail and the amount of remission are matters within the sound discretion of the trial court," the court must consider the factors and policies that are relevant to the equitable exercise of its discretion. State v. Clayton, 361 N.J.Super. 388, 392-93, 825 A.2d 1155 (App.Div.2003) (discussing the factors and citing State v. Peace, 63 N.J. 127, 129, 305 A.2d 410 (1973); State v. de la Hoya, 359 N.J.Super. 194, 198, 819 A.2d 467 (App.Div.2003); State v. Mercado, 329 N.J.Super. 265, 269-71, 747 A.2d 785 (App. Div.2000); State v. Hyers, 122 N.J.Super. 177, 180, 299 A.2d 748 (App.Div.1973)). It is not enough for the court to recite the relevant factors; the court "must also explain how it weighed them." de la Hoya, supra, 359 N.J.Super. at 200, 819 A.2d 467.
The court also must consider the remittitur guidelines, which were developed to promote consistent application of the factors identified in our case law and to "provide `a starting point when determining . . . the amount to remit.'" State v. Harris, 382 N.J.Super. 67, 71, 887 A.2d 728 (App.Div.2005) (quoting State v. Ramirez, 378 N.J.Super. 355, 366, 875 A.2d 1025 (2005)), certif. denied, 186 N.J. 365, 895 A.2d 452 (2006); see Directive # 13-04, supra, Attachment F. The remittitur guidelines are set forth in full in Ramirez, supra, 378 N.J.Super. at 366-71, 875 A.2d 1025, and discussed in Ramirez, Harris, State v. Hawkins, 382 N.J.Super. 458, 465-66, 889 A.2d 1081 (App.Div.2006) and Ruccatano, supra, 388 N.J.Super. at 623-29, 909 A.2d 1173.
Proper application of the Director's remittitur guidelines requires an understanding of the structure. The four major sections are: "Policy Concerns To Consider in Determining Remission"; "Factors to Weigh in Determining Remission"; "Balancing of Factors"; and "Guidelines." Directive # 13-04, supra, Attachment F. The final section provides three schedules that suggest remission amounts to be used as the "starting point." Ibid.; see Ruccatano, supra, 388 N.J.Super. at 624-25, 909 A.2d 1173. The four sections are related. Based on the particular facts of the case, the remission amount indicated by the schedules included in the "Guidelines" should be increased or decreased after balancing the factors that have been weighed in accordance with the policy concerns. See Ruccatano, supra, 388 N.J.Super. at 627-28, 909 A.2d 1173; Harris, supra, 382 N.J.Super. at 71, 887 A.2d 728.
The two policy concerns identified in the Directive are "providing an incentive to the surety to take active and reasonable steps to recapture" and avoiding unreasonable measures that would likely lead sureties to "be overcautious" in posting future bail bonds. Directive # 13-04, supra, Attachment F; see Ruccatano, supra, 388 N.J.Super. at 624, 909 A.2d 1173 (quoting the provisions); de la Hoya, supra, 359 N.J.Super. at 199, 819 A.2d 467 (discussing the policies that are now incorporated in the Directive).
The "factors" are drawn from Clayton and the cases cited therein. 361 N.J.Super. at 392-93, 825 A.2d 1155. They are as follows: whether efforts to supervise the defendant while on bail and recapture a defendant at large were reasonable under the circumstances (factors 1 and 3); whether the defendant committed a new crime while a fugitive, and the duration of the period that the defendant was at large (factors 4 and 7); the amount of the posted bail (factor 8); prejudice and expense incurred by the State, including the intangible element of injury to the public whenever a defendant deliberately fails to appear (factors 5 and 6); and whether the surety *134 is a commercial bondsman (factor 2). Directive # 13-04, supra, Attachment F.
The "balancing" requires a "primary focus" on "efforts" of the surety to secure the defendant's appearance and return, especially in cases where the defendant remained at large for a significant period. See ibid. (citing Mercado, supra, 329 N.J.Super. at 271, 747 A.2d 785).
The "Guidelines" section is comprised of three separate schedules. Ibid. The appropriate schedule is to be selected based on the defendant's status as a fugitive and his or her new criminal conduct while at large. Ibid. Because Toscano was in custody at the time of the application for remission and did not commit a new crime while on bail, the schedule at issue is the second schedule, which applies when the defendant is not a fugitive and did not commit a crime while at large. Ibid. In Ruccatano, this court considered the third schedule, which applies when the defendant is not a fugitive and did commit a new crime while at large. 388 N.J.Super. at 625, 909 A.2d 1173.[2]
The second and third schedules provide three categories for remission based upon the surety's efforts to supervise and recapture the defendant. The categories are substantial, partial and minimal remission. Substantial remission is reserved for a surety who provides "close ongoing supervision" and "made immediate substantial efforts to recapture the defendant." Directive # 13-04, supra, Attachment F. Partial remission is available to a surety who either provided "close supervision while the defendant was out on bail but did not engage in immediate substantial efforts to recapture" or "provided minimal or no supervision while the defendant was out on bail but did engage in immediate substantial efforts to recapture the defendant." Ibid. Minimal remission is available for a surety who provided "minimal or no supervision while the defendant was out on bail and failed to engage in immediate substantial efforts to recapture."[3]Ibid.
Safety did not supervise Toscano while he was released on bail. Based on that finding, Safety does not qualify for substantial remission and cannot qualify for partial remission based on supervisory efforts. Accordingly, the question is whether Safety qualifies for partial remission because it engaged in "immediate substantial *135 efforts to recapture the defendant."
Ruccatano explains the phrase "immediate substantial efforts." 388 N.J.Super. at 625-29, 909 A.2d 1173. "[I]mmediacy of the surety's efforts should ordinarily be measured from the time the surety is informed of the warrant/forfeiture, without reference to when it would or should have learned of that fact if there had been proper supervision." Id. at 626, 909 A.2d 1173 (concluding that supervisory efforts are considered separately and should not be double counted in evaluating efforts to recapture). To be "substantial," the efforts must be reasonable under the circumstances of the case and "effective." Id. at 627-29, 909 A.2d 1173. The quality as well as the quantity of the effort is relevant. Id. at 628, 909 A.2d 1173. Effective work need not be time consuming or labor intensive to be substantial. Id. at 628-29, 909 A.2d 1173.
Where efforts to recapture are at issue, the Director's remittitur guidelines state the distinction between partial and minimal remission in absolute terms. The question, as stated, is whether the surety "did engage in" or "failed to engage in" "immediate substantial efforts." The measure is exacting; the same standard is used to describe the recapture effort required of a surety who qualifies for substantial remission. Directive # 13-04, supra, Attachment F; see Mercado, supra, 329 N.J.Super. at 271, 747 A.2d 785 (discussing the essential obligations of a surety).
Safety delayed one month after receiving notice. But, because the defendant was no longer a fugitive when Safety received notice, not even "immediate" and "substantial" effort could have been "effective" in bringing about his recapture. Nonetheless, it is apparent that after a brief delay, Safety did everything necessary under the circumstances. See Ruccatano, supra, 388 N.J.Super. at 628, 909 A.2d 1173 (noting that the County failed to identify "what more [the surety] could or should have done").
This case raises the question whether recapture efforts that may fall short of "immediate" and "substantial" must be treated as minimal. There is a wide range of effort between abject failure to perform obligations under the bond and engaging in "immediate substantial efforts to recapture." Where the surety's efforts approach but do not meet the standard of "immediate" and "substantial," the trial court should consider whether it is appropriate to select a "starting point" between those for minimal and partial remission. See id. at 627, 909 A.2d 1173 (noting that the purpose of the remittitur guidelines is "to provide `a starting point'" and stressing that "flexibility . . . is the governing principle").
The "policy concerns" and "factors" that inform and guide decisions under the remittitur guidelines warrant increasing remissions as the surety's efforts approach "immediate" and "substantial." See Directive # 13-04, supra, Attachment F (stating "policy concerns" and listing "reasonable efforts under the circumstances" as factor 1); State v. Harmon, 361 N.J.Super. 250, 255, 825 A.2d 515 (App.Div.2003); de la Hoya, supra, 359 N.J.Super. at 199, 819 A.2d 467; Mercado, supra, 329 N.J.Super. at 271, 747 A.2d 785. The policy that favors "providing an incentive [for] active and reasonable steps to recapture," does not favor a minimal remission in every case where the surety's recapture effort may be less than immediate. See Directive # 13-04, supra, Attachment F. Such a practice would reduce the incentive to undertake substantial efforts after a brief delay. See de la Hoya, supra, 359 N.J.Super. at 199, 819 A.2d 467. Similarly, *136 the policy against remissions that are so unreasonably small as to discourage future posting of bonds would be disserved by providing no more than a minimal remission in every case of ineffective efforts. See ibid.; Directive # 13-04, supra, Attachment F. When there is nothing to be done because the defendant surrendered or was recaptured before the surety had notice, doing nothing is "reasonable." See Directive # 13-04, supra, Attachment F (factor 1). Sureties would likely be less willing to post bonds if remission were limited to a minimal amount solely because their effort was not needed due to fortuity. See ibid. ("Policy Concerns").
The "primary focus" should be on the "surety's efforts" under the circumstances of the case. See ibid. ("Balancing of Factors"). The surety has the burden of proof, and it must provide the facts that favor remission based on its efforts. See Mercado, supra, 329 N.J.Super. at 269-70, 747 A.2d 785. Cases in which the surety simply checks court records while waiting for the authorities to recapture the defendant are different than cases in which the defendant has been located and is no longer a fugitive when the surety receives notice of failure to appear. The trial court must consider such differences in exercising its discretion to accept, increase or decrease the remission amount suggested in the applicable schedule.
The determination to set the amount to be remitted at the "starting point" suggested by the schedule is no less a decision than a determination to adjust that amount. In either case, the court is obligated to state findings, weigh the relevant factors, and give reasons for its determination based on the balance of the equities under the circumstances of the case.
In weighing the equities, the judge also must consider the "amount" of the bond (factor 8). See de la Hoya, supra, 359 N.J.Super. at 199, 819 A.2d 467 (discussing the relevance of the amount at issue). Although the schedules provide "starting points" that refer to the percentage of the bond, the dollar amount is a factor relevant to the "policy concerns" discussed above and the public's interest in compensation for expense and harm (factors 5 and 6). This bond was for $40,000. The remission of twenty percent resulted in a forfeiture of $32,000. In a case where the defendant did not commit a new crime, was at large for thirty-nine days and recaptured before the surety had notice of his failure to appear, the amount remitted is inconsistent with the case law and the Director's remittitur guidelines.
Remission of twenty percent overlooks important facts. Safety's less than immediate response was briefly delayed. Safety's effort was not "effective" because the defendant was no longer a fugitive when Safety received notification; at that point any effort by Safety was superfluous. There is no evidence that retention of $32,000 is necessary to compensate for expenses born by the public or to provide a greater incentive for "immediate" action.
The order setting the amount of remission and forfeiture is vacated and remanded for reconsideration in light of the Director's remittitur guidelines and our decisions. We do not retain jurisdiction.
NOTES
[1] Judge Lisa did not participate in oral argument. However, the parties consented to his participation in the decision. R. 2:13-2(b).
[2] The second and third schedules provide different "starting points" for remission in each category based upon whether or not the defendant committed a new crime while at large, which is listed as factor 7. Directive # 13-04, supra, Attachment F. By selecting between the second and third schedules, a court accounts for factor 7. In contrast, the first schedule, which applies when the defendant is a fugitive at the time of the motion, does not account for new crimes. Ibid. Absent a special reason based on the facts of the case, courts should avoid "double counting" factor 7 as a reason for increasing or decreasing the remitted amount when applying schedule two or three. See Ruccatano, supra, 388 N.J.Super. at 626, 909 A.2d 1173.
[3] For each of the three categories, the schedules recommend three ranges for percentage of remission that vary with and account for the duration of the period that the defendant remained at large (factor 4). The three periods are: 1) six months or less; 2) between six and forty-eight months; and 3) more than forty-eight months. Under the schedule applicable when the defendant has not committed a crime, the ranges for the three periods are: substantial remission, 1) 95%, 2) 75% to 95%, and 3) 0% to 75%; partial remission, 1) 75%, 2) 20% to 75%, and 3) 0% to 20%; minimal remission, 1) 20%, 2) 5% to 20%, and 3) 0% to 5%. In order to avoid double counting, an increase or decrease that is based on duration alone (factor 4) should be consistent with the ranges. See Ruccatano, supra, 388 N.J.Super. at 626, 909 A.2d 1173 (discussing double counting).