887 A.2d 728 (2005)
382 N.J. Super. 67
STATE of New Jersey, Plaintiff-Respondent,
v.
Tony HARRIS, Jr., Defendant, and
Lexington National Insurance Co., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 2005.
Decided December 27, 2005.
*729 John S. Furlong, West Trenton, argued the cause for appellant (Furlong and Krasny, attorneys; Mr. Furlong, on the brief).
Donna M. Whiteside, Assistant Camden County Counsel, argued the cause for respondent County of Camden (M. Lou Garty, County Counsel, attorney; Ms. Whiteside, on the brief).
Before Judges STERN, GRALL[1] and LIHOTZ.
The opinion of the court was delivered by
STERN, P.J.A.D.
Lexington National Insurance Company appeals from an order of December 16, 2004, which granted in part but denied in part its motion for remission of the forfeiture of the bail of defendant, Tony Harris. While a remission was granted in the amount of $26,250, judgment was entered in the amount of $8,750 against the corporate surety.[2] On this appeal, Lexington argues that "the trial court's order forfeiting $8,750 of the bail bond was not in the interest of justice and was an abuse of discretion."
The material facts are not in dispute. The $35,000 bail was posted on January 8, 2003.[3] Defendant failed to appear on April 8, 2004, and bail was forfeited. Defendant was arrested on June 26, 2004. He was not captured or surrendered by Lexington, but was apprehended by the Camden County Sheriff. The court ordered a 75% remission.
According to the certification of an agent of Lexington in support of the "motion to vacate bail forfeiture and discharge bail":
3. During the time the defendant was released on bail our office kept in close contact with him to assure his presence in Court. He was required to report to our office every week to insure he would appear in Court when required; *730 the defendant did report as required. Attached is a checklist maintained by my office with specific dates the defendant reported to our office. The list is not inclusive of the contact he had with our office. Field agents sporadically went to his home to assure he remained available to appear in Court.
4. Immediately upon notification of the bail forfeiture a search was conducted to locate him. Investigators were sent to his last known address but to no avail. Friends and family members of the defendant were contacted who were unaware where the defendant could be located.
5. Several addresses were received in Camden, Vineland and the surrounding areas where the defendant may be located and numerous surveillance's [sic] were conducted at those locations.
Attached to the certification was a printed "check[-]in history," revealing "check-ins" by telephone while defendant was released on bail.
In opposition to the motion, the Camden County Sheriff certified as to the direct and indirect costs of operating the fugitive recovery unit of his office, which captured defendant and returned him to the County Jail. The State "also point[s] out that the ... defendant stopped regularly reporting to the surety after April 1, 2004," over a month before Lexington received notice of the forfeiture. The "notice of bail forfeiture for surety" was dated May 6, 2004.
In granting the partial remission, Judge Thomas A. Brown, Jr., analyzed the appropriate factors and concluded:
A bail forfeiture may be set aside in whole or in part if its enforcement is not required by the factors set forth in State v. Hyers, 122 N.J.Super. 177, 299 A.2d 748 ([App.Div.] 1973). The following is a listing of the factors enunciated in Hyers and their relevance to this case.
First, the surety was a commercial surety, in this case, Lexington National Insurance Co. Second, the bondsman's supervision of the defendant during the time of his release was inadequate. Third, the length of time between the issuance of the bench warrant and its execution was only 79 days. Fourth, the County did allege expenses or prejudice to their case, by submitting an affidavit from the Sheriff of Camden County regarding the Fugitive Unit. Fifth, the prejudice to the State exists in every case. There is an intangible element of injury to the public interest in almost any case where a defendant deliberately fails to make an appearance in a criminal case. State v. Peace, 63 N.J. 127, 129, 305 A.2d 410 (1973). [See also State v. Mercado, 329 N.J.Super. 265, 271, 747 A.2d 785 (App.Div.2000).] This intangible element includes the "county's employment of a fugitive squad, the expenses resulting therefrom, and the county's efforts in enforcing forfeiture." State v. Harmon, 361 N.J.Super. 250, 256, 825 A.2d 515 (App.Div.2003). Whether the defendant committed any new crimes while a fugitive can weigh very heavily against the interests of the surety. State v. de la Hoya, 359 N.J.Super. 194, 200, 819 A.2d 467 (App.Div. 2003). There is no evidence that such new crimes were committed in this case. Sixth, the bondsman did investigate the Principal's location, by making a single phone call.
Finally, any forfeiture imposed represents reimbursement of expenses incurred by the State and is considered adequate in satisfying the interests of justice.
The surety in this case sufficiently monitored the defendant and attached a check[-]in history report to the moving papers. The surety made affirmative *731 attempts to recapture the defendant, but [was] unable to do so. The defendant does not appear to have committed any new crimes while a fugitive. The Court sees the short period of fugitive time as a significant factor for remission as well as the adequate supervision, and the surety's inability to capture the defendant weighs against remission. This Court finds that a seventy-five percent remission of the posted bail is fair to all parties involved.
We affirm the judgment substantially for the reasons expressed by Judge Brown in his written "findings of fact and conclusions of law" appended to the judgment of December 16, 2004. See also State v. Clayton, 361 N.J.Super. 388, 392-93, 825 A.2d 1155 (App.Div.2003), and State v. Harmon, 361 N.J.Super. 250, 254-55, 825 A.2d 515 (App.Div.2003) ("onus placed on commercial sureties [cannot be] so great as to risk the impairment of a defendant's realistic right to post pretrial bail," bail forfeiture not "primarily a revenue-raising technique for the public fisc"); State v. Dillard, 361 N.J.Super. 184, 187-88, 824 A.2d 1100 (App.Div.2003) (noting significance of surety's "supervision" pre-forfeiture and subsequent efforts to pursue, capture and return the defendant); State v. de la Hoya, 359 N.J.Super. 194, 199, 819 A.2d 467 (App.Div.2003) (detailing factors including "not only an appropriate percentage of the bail but also its quantum," and burden on surety to demonstrate satisfaction of its "essential obligation" to return defendant to custody).[4]
We add that the judge's findings are not inconsistent with Attachment F, "the Remittitur Guidelines," appended to Directive 13-04 regarding "Bail and Bail Forfeiture," issued by the Administrative Director of the Courts on November 17, 2004. See Directive # 13-04, Revision to Forms and Procedures Governing Bail and Bail Forfeitures, Attachment F (2004), http://www.judiciary.state.nj. us/directive /criminal/dir-13-04.pdf; see also State v. Ramirez, 378 N.J.Super. 355, 366-69, 875 A.2d 1025 (App.Div.2005). The guidelines were promulgated based on then recent case law in order to achieve uniformity and provide "a starting point when determining whether to grant a remission and, if so, the amount to remit."[5]Id. at 37, 875 A.2d 1025; see Ramirez, supra, at 366, 875 A.2d 1025. They recommend that "where defendant is not a fugitive when remission motion is made and defendant did not commit a new crime while a fugitive," and "the surety provided minimal or no supervision while the defendant was out on bail but did engage in immediate substantial efforts to recapture the defendant," a 75% remission is appropriate, after costs are deducted, if defendant remains a fugitive for six months or less. Id. at 38, 875 A.2d 1025; see Ramirez, supra, at 367, 875 A.2d 1025. The judge's determination is consistent with the Guidelines.
*732 Here, Lexington seeks a 95% remission under the Guidelines because it "provided close ongoing supervision while defendant was out on bail and made immediate substantial efforts to recapture the defendant," and the defendant remained a fugitive "for 6 months or less." Id. at 38, 875 A.2d 1025; see Ramirez, supra, at 368, 875 A.2d 1025. But there is no basis in the record to conclude that the supervision before forfeiture warranted application of that approach because the contact was essentially by telephone, and the surety apparently took no action and was unaware of defendant's fugitive status for a month after the forfeiture.
Lexington justly complains it did not receive notice of the forfeiture until May 10, 2004, a month after the non-appearance, and four days after it was mailed. The notice should have been mailed to the surety "forthwith" upon forfeiture. See R. 3:26-6(a). That fact is relevant to the surety's efforts and ability to apprehend or capture defendant. Nevertheless, defendant had not reported to the surety for a month by then, and the surety still had over six weeks after receipt of the notice to find defendant.
Finally, Lexington claims that the capture was within seventy-five days of the notice in which to object to the forfeiture as required by R. 3:26-6(a). Lexington is correct that R. 3:26-6(a) requires seventy-five days notice in which to object to the forfeiture before judgment may be entered. See also R. 3:26-6(c). However, while judgment cannot be entered within the seventy-five days following notice of forfeiture, that does not mean the surety is entitled to a full remission after forfeiture if the defendant is arrested as a fugitive through efforts unrelated to the surety within that period, and here the judgment was entered after granting the partial remission.
The judgment is affirmed.
NOTES
[1] Judge Grall did not participate at argument, but with the consent of both counsel, she participated in the decision of the court.
[2] Judgment was also entered against defendant Harris and Christopher Orlando, Lexington's surety agent.
[3] The record does not develop the charges for which the bail was posted. However, it appears that the bail was forfeited when defendant failed to appear in the Law Division of Superior Court, and therefore, Harris had been charged with an indictable crime or crimes.
[4] R. 3:26-6(a) was amended, effective September 1, 2004, to require written objection and application to set aside the forfeiture within seventy-five days of the date of the notice of forfeiture and to provide notice that the insurer and its agents would be removed from the Bail Registry and unauthorized to write bail if the judgment is not paid "until satisfaction is made." See also the amendments to R. 3:26-6(c) providing for the summary entry of judgment and R. 3:26-6(b) regarding "setting aside" the forfeiture or judgment.
[5] The guidelines are a helpful starting point for evaluating remission applications made either before or after judgment is enforced. See R. 3:26-6(b). But they are only "guidelines," and the remission application must consider subsequent case law and all factors relevant to the particular case.