952 A.2d 1049

STATE OF NEW JERSEY (COUNTY OF BERGEN), PLAINTIFF–RESPONDENT, v. NAZARIO VENTURA, DEFENDANT, AND SAFETY NATIONAL CASUALTY CORPORATION, AS SURETY, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY (COUNTY OF MIDDLESEX), PLAINTIFF–RESPONDENT, v. LEIDY GRANADOS, DEFENDANT, AND LEXINGTON NATIONAL INSURANCE CORP., (SURETY), DEFENDANT–APPELLANT.

Argued May 6, 2008—Decided August 5, 2008.

*Samuel M. Silver* argued the cause for appellant Safety National Casualty Corporation.

*Richard P. Blender* argued the cause for appellant Lexington National Insurance Corp.

*Christopher J. Kane* argued the cause for respondent State of New Jersey (County of Bergen) (*Law Offices of David S. Lafferty*, attorneys).

*Niki Athanasopoulos*, Deputy County Counsel, argued the cause for respondent State of New Jersey (County of Middlesex) (*Thomas F. Kelso*, Middlesex County Counsel, attorney).

Justice WALLACE, JR., delivered the opinion of the Court.

We consolidate these companion cases for the purpose of this opinion and address whether it was error to deny the motion of the respective sureties to remit the forfeited bail. In both cases, a corporate surety posted bail to secure the pretrial release of a defendant who, upon being released from jail, failed to appear at a scheduled court proceeding. A bench warrant was issued for each defendant, and the bails were deemed forfeited. Upon learning of the forfeiture, the surety in one case discovered that the defendant was incarcerated in Canada, and the surety in the other case discovered that the defendant was incarcerated in North Carolina. Despite New Jersey authorities placing a detainer on each defendant, the defendants were deported. In each case, the trial court denied the surety's motion to remit the forfeited bail, and the Appellate Division affirmed. We granted certification and now affirm.

We hold that a motion for remission of forfeited bail is assessed in a fact-sensitive manner, weighing a multitude of factors outlined in *State v. Hyers*, 122 *N.J.Super.* 177, 180, 299 *A.*2d 748 (App.Div. 1973), and its progeny. A crucial factor in every bail remission case is whether the defendant remains a fugitive. In the cases before us, we find no abuse of discretion in the denial of the separate motions to remit the forfeited bail.

## I.

## A.

### State v. Ventura

In 2005, Nazario Ventura was arrested in Bergen County on weapons and narcotics charges. Safety National Casualty Corporation (Safety), a corporate surety authorized to underwrite bail bonds, posted a $150,000.00 bond for Ventura's release. An indictment was subsequently returned against Ventura. The Criminal Division Manager's Office notified Ventura that he was required to appear in court on June 13, 2005. When Ventura failed to appear on the scheduled court date, the trial court issued a bench warrant for his arrest and declared the bail forfeited. On June 15, 2005, the trial court sent Safety a notice of bail forfeiture and instructed Safety that it had seventy-five days to move to set aside the bail forfeiture or suffer a default judgment in the full amount of the bail. On November 15, 2005, the court notified Safety that if the judgment was not satisfied, Safety would be precluded from writing any more bail in the State. In a letter dated December 7, 2005, Safety responded that it would pay the judgment by December 20, 2005.

Meanwhile, Safety assigned the matter to a recovery agent to locate Ventura. During the investigation, Safety learned that Ventura had fled to Canada to be with his wife. The agent provided the address of defendant's wife, who was living in Montreal at the time, to the Bergen County Prosecutor's Office–Fugitive Unit (Bergen County). On December 13, 2005, the recovery agent reported that Ventura was incarcerated in Montreal on immigration violations and had been incarcerated there since August 2005. A detainer was placed on defendant by Bergen County.

On December 19, 2005, Safety filed a Motion to Stay the Entry of the Judgment and to Vacate the Forfeiture and/or Judgment, Exonerate the Surety, and Discharge the Bond. The motion included a letter from the recovery agent dated December 13,

2005, confirming Ventura's incarceration in Montreal on immigration violations. The letter further stated that "Ventura also has the Bergen County Warrant as a detainer hold, [and] Ventura will be extradited back to Bergen County within a few months." The trial court denied the motion without prejudice on February 23, 2006. The court expressly provided in the order that Safety could renew its motion upon defendant's return to the United States.

On June 30, 2006, after learning that Ventura had been deported to the Dominican Republic, Safety filed a second motion for remission. The motion included a letter from the recovery agent explaining that he had received information from Bergen County that Ventura had been deported to the Dominican Republic. In a follow-up letter, the recovery agent explained that the Canadian Marshals Service had notified Bergen County authorities that it had deported Ventura to the Dominican Republic; that the U.S. Marshals Service had advised Bergen County officials that Bergen County could bring Ventura back to the United States; and that Bergen County had stated that it would commence the process of securing Ventura's return.

A hearing on Safety's motion was held on August 2, 2006. Other than the agent's letter, Safety did not submit any evidence or call any witnesses at the hearing. The trial court noted that Ventura remained in the Dominican Republic, and that Safety had not produced him before the court. Accordingly, the trial court denied the motion.

Safety sought a stay of the judgment and filed a notice of appeal. In January 2007, a stay was granted, conditioned upon the filing of a supersedeas bond. The Appellate Division affirmed. In concluding that denial of remission was appropriate, the panel stated that "when a defendant remains a fugitive at the time the remission motion is made, the essential undertaking of the surety remains unsatisfied." The panel also noted that its conclusion was consistent with Directive # 13–04: Revision to Forms and Procedures Governing Bail and Bail Forfeitures, Attachment F: Remittitur Guidelines, at 1–4 (Nov. 17 2004), *available at http://www.*

*judiciary.state.nj.us/directive/criminal/dir1304.pdf* [hereinafter Guidelines] issued by the Administrative Director of the Courts concerning bail and bail forfeiture. *Ibid.* We granted Safety's petition for certification. 192 *N.J.* 480, 932 *A.*2d 31 (2007).

## B.

### *State v. Granados*

On October 4, 2004, Leidy Granados was arrested in Middlesex County for possession of stolen goods. Lexington National Insurance Company (Lexington) posted a $40,000.00 bond to secure her pretrial release. Lexington supervised Granados via telephone calls, mail correspondence, and personal visitations. When Granados failed to appear at the surety's office for a regularly scheduled visit, Lexington commenced an investigation to find her. The surety contacted family and friends of Granados and hired a professional investigator to assist in locating her. Nevertheless, Granados could not be found and she missed her status conference on December 10, 2004. The trial court issued a bench warrant for her arrest and ordered the bail forfeited.

Although the record is not clear regarding the details, it appears that on December 23, 2004, the Middlesex County Prosecutor's Office—Fugitive Task Force Unit (Middlesex County) learned through the National Crime Information Center that Granados had been arrested and was being held at the Randolph County Jail in Asheboro, North Carolina. That same day, Middlesex County faxed a copy of the bench warrant to the Randolph County Jail, requesting that the warrant be given the same effect as a detainer. Several weeks later, Middlesex County lodged a formal detainer with the Randolph County Jail.

Meanwhile, on January 6, 2005, Lexington filed a motion to vacate the bail forfeiture. As part of its motion, counsel certified that Granados was incarcerated in North Carolina and that Middlesex County had lodged a detainer. Shortly thereafter, Middlesex County received notice that Granados was transferred to the

custody of the U.S. Marshals Service. Middlesex County then lodged a detainer with that office. On June 2, 2005, the trial court heard and denied Lexington's motion, finding the surety liable for the full amount of the bond.

On June 8, 2005, the U.S. Marshals Service informed Middlesex County that it could not locate Granados. Middlesex County then contacted a United States Immigration and Customs Enforcement (ICE) field office in New Jersey. Further investigation revealed that Granados had been deported to Colombia on June 23, 2005.

After learning of Granados's deportation, Lexington filed a second motion to vacate the bail forfeiture. Lexington submitted a certification that described what occurred. The certification noted that Granados was also known as Carmen Rugu–Martinez and included a copy of a letter from the Deportation Officer of Homeland Security stating that "Carmen Rugu–Martinez was removed from the United States to Colombia on June 23, 2005 by United States Immigration and Customs Enforcement."

In opposition to the motion, Middlesex County submitted the certification of Sergeant David Jackson, who stated that once Granados was located in a North Carolina jail, a detainer was lodged there. Further, Jackson noted that on June 8, 2005, the U.S. Marshals Service advised Middlesex County that Granados could not be located, and eventually ICE confirmed that Granados had been deported to Colombia on June 23, 2005.

The trial court acknowledged that Lexington supervised Granados while on bail and attempted to locate her after she failed to appear. However, the trial court found that Lexington failed "to intervene or impact upon the ICE status or deportation proceedings against this defendant." In light of Granados's continued absence, the court denied Lexington's motion.

Lexington appealed and the Appellate Division affirmed. The panel concluded that the trial court considered the equities of the parties and did not abuse its discretion in denying remission because previous efforts to supervise and recapture were out-

weighed by Lexington's failure to intervene in Granados's deportation proceedings. We granted Lexington's petition for certification. 193 *N.J.* 276, 937 *A.*2d 978 (2007).

## II.

### A.

#### State v. Ventura

Safety argues that the trial court improperly focused on defendant's non-presence in the State while neglecting other relevant factors articulated in prior caselaw and the Guidelines developed by the Administrative Office of the Courts. Safety contends that consistent with the Guidelines, the primary rationale of bail forfeiture is to create an incentive for sureties to take reasonable steps to supervise and recapture fugitive defendants. It contends that when a defendant cannot be returned to the prosecuting jurisdiction through no fault of the surety, the trial court should consider the efforts undertaken by the surety in locating the defendant. Safety contends there is a fundamental difference between fugitives who are not present in the State because they are evading capture, and defendants who cannot be returned because they are in the custody of another criminal justice system.

The State argues that when a defendant fails to appear, the defendant remains a fugitive and the bail should be forfeited. The State further asserts that Ventura's deportation to the Dominican Republic did not alter the fact that he remained a fugitive.

### B.

#### State v. Granados

Lexington argues that bail should be set aside when a defendant is deported and cannot be returned to the jurisdiction. Lexington contends that the court's decision is inconsistent with the caselaw and Guidelines of the Administrative Director, and that it was error for the court to rely on Lexington's non-intervention in

Granados's deportation hearing. Lexington adds that there will be a chilling effect on sureties providing bail if the court applies a strict forfeiture rule for non-appearance. If that occurs, Safety argues that there will be a substantial hardship upon a defendant's family and friends who serve as the surety.

The State counters that the trial court conducted a careful weighing of the relevant facts and reached a principled conclusion. In balancing the equities, the court properly concluded that remittance was not appropriate because Lexington failed to intervene in the deportation proceeding and failed to secure Granados's presence in New Jersey. The State rejects the chilling effect argument, noting that commercial bondsmen assume certain risks, including the possibility that the defendant is an undocumented illegal alien. Further, the State adds that the trial court considered whether the surety is a commercial bondsman in arriving at an equitable outcome, thus undermining Lexington's friends-and-family argument.

### III.

#### A.

*Rule* 3:26 generally sets forth our guidelines concerning bail. All persons charged with a crime "shall be bailable before conviction on such terms as, in the judgment of the court, will ensure their presence in court when required." *R.* 3:26–1(a). Furthermore, "a person admitted to bail is required, together with that person's sureties, to sign and execute a recognizance," which "shall be conditioned upon the defendant's appearance at all stages of the proceedings until final determination of the matter, unless otherwise ordered by the court." *R.* 3:26–4(a). If a defendant fails to adhere to a bail condition, the court "on its own motion shall order forfeiture of the bail, [and give notice to] any insurer, bail agent or agency." *R.* 3:26–6(a). The notice shall inform the surety that it has seventy-five days to file a motion seeking to set

aside the forfeiture and, in the absence thereof, judgment "will be entered as to any outstanding bail." *R.* 3:26–6(a).

 Pertinent to these appeals, a forfeiture may be vacated, "in whole or in part, if its enforcement is not required in the interest of justice upon such conditions as [the court] imposes." *R.* 3:26–6(b). The court may order remission before or after the entry of a judgment of default. *R.* 3:26–6(c). In any event, the party seeking to set aside the judgment bears the burden of proving that remission is justified. *See State v. Fields,* 137 *N.J.Super.* 76, 81, 347 *A.*2d 810 (App.Div.1975) (stating party seeking to set aside forfeiture bears burden of proving "it was inequitable to insist on the forfeiture and that the forfeiture was not required in the interest of justice").

We have explained that the decision to remit and the amount of remission lies essentially in the discretion of the trial court. *State v. Peace,* 63 *N.J.* 127, 129, 305 *A.*2d 410 (1973). In *Hyers, supra,* an appellate panel delineated a list of factors that the trial court should consider before granting or denying remission. 122 *N.J.Super.* at 180, 299 *A.*2d 748. These factors include the following:

(a) whether the applicant is a commercial bondsman; (b) the bondsman's supervision, if any, of defendant during the time of his release; (c) the bondsman's efforts to insure the return of the fugitive; (d) the time elapsed between the date ordered for the appearance of defendant and his return to court; (e) the prejudice, if any, to the State because of the absence of defendant; (f) the expenses incurred by the State by reason of the default in appearance, the recapture of the fugitive and the enforcement of the forfeiture; [and] (g) whether reimbursement of the expenses incurred in (f) will adequately satisfy the interests of justice.

[*Ibid.*]

Shortly thereafter, in *Peace, supra,* this Court adopted the *Hyers* factors as a blueprint to assist courts in deciding bail remission matters. 63 *N.J.* at 129, 305 *A.*2d 410.

Recently, in several cases, the Appellate Division added other relevant factors that the trial court should consider when evaluating a motion for remission. For example, in *State v. Mercado,* 329 *N.J.Super.* 265, 267–68, 747 *A.*2d 785 (App.Div.2000), an appellate

panel consolidated three appeals sharing a common fact pattern. In each case, the corporate surety posted bail for the defendant who failed to appear and the police apprehended the defendant without the surety's assistance. *Id.* at 268, 747 *A.*2d 785. After citing the relevant *Hyers* factors for consideration of remission, the panel declared that a primary concern was whether the surety's efforts helped to secure the defendant's return. *Id.* at 271, 747 *A.*2d 785. Citing the lack of effort by the surety to locate the defendant, the panel found no abuse of discretion by the trial court's forfeiture of 90% of each bail. *Id.* at 273, 747 *A.*2d 785.

Similarly, in *State v. de la Hoya,* 359 *N.J.Super.* 194, 196, 819 *A.*2d 467 (App.Div.2003), a surety performed random checks at the defendant's home and workplace and required the defendant to report in person and by telephone. Despite those efforts, the defendant failed to appear for a court date. *Id.* at 197, 819 *A.*2d 467. The surety investigated the defendant's whereabouts, and apprehended and returned him to the State. *Ibid.* In response to the surety's motion to remit bail, the trial court granted partial remission of 50% of the previously forfeited bail. *Ibid.* In addressing the surety's appeal, the panel noted the following concerns beyond the *Hyers* factors:

> Paramount among them is the necessity of providing an incentive to the surety to take active and reasonable steps to recapture a fugitive defendant. Beyond that, if remission were unreasonably withheld, corporate sureties might be overcautious in their willingness to post bail, resulting in an impairment of an accused's constitutional right to pretrial bail.
>
> [*Id.* at 199, 819 *A.*2d 467.]

The panel concluded that the surety satisfied its heavy burden to secure the defendant's return and the State "did not demonstrate any special or individualized negative considerations." *Ibid.* The panel exercised original jurisdiction to increase the amount remitted from 50% to 80%. *Id.* at 200, 819 *A.*2d 467; *see also, State v. Harmon,* 361 *N.J.Super.* at 250, 254–55, 825 *A.*2d 515 (App.Div. 2003) (noting that focus of bail forfeiture procedure is vindication of public interest and not primarily revenue generating); *State v. Clayton,* 361 *N.J.Super.* 388, 393, 825 *A.*2d 1155 (App.Div.2003)

(same); *State v. Dillard,* 361 *N.J.Super.* 184, 188, 824 *A.*2d 1100 (App.Div.2003) (same).

As noted previously, the Administrative Office of the Courts has developed Guidelines to assist in bail remission proceedings. *Guidelines, supra,* Attachment F at 1–4. Those Guidelines review the relevant caselaw and provide the trial court with starting points for an appropriate analysis. The Guidelines state:

> The following are a broad set of guidelines that have been developed to provide judges with a starting point when determining whether to grant remission, and, if so, the amount to remit. Obviously, the particular facts in an individual case will determine whether the amount to remit is increased or decreased. The genesis for developing some of the guidelines was derived from recent Appellate Division decisions.
>
> [*Id.* at 2.]

Under the first starting point, the Guidelines presume that no remission is appropriate: "Where the defendant remains a fugitive when the remission motion is made, the essential undertaking of the surety remains unsatisfied, and the denial of any remission is entirely appropriate." *Ibid.* (quoting *Harmon, supra,* 361 *N.J.Super.* at 255, 825 *A.*2d 515).

The second starting point addresses the situation where the defendant is no longer a fugitive and did not commit a new crime. *Id.* at 3. Under those circumstances, the Guidelines envision either minimal, partial, or substantial remission depending on the surety's supervision of the defendant while on bail and/or the surety's effort to recapture the defendant upon non-appearance. *Ibid.* Therefore, if the surety provides both types of assistance, then substantial remission is appropriate. Alternatively, offering one type of assistance permits partial remission, while performing neither task warrants only minimal remission. *Ibid.* Those stratifications guide motion judges to presumptive percentage ranges. The percentage ranges inversely correlate to the length of time the defendant was a fugitive: the greater the time defendant was a fugitive, the lower the percentage of the forfeiture should be remitted. *Ibid; see, e.g., State v. Harris,* 382 *N.J.Super.* 67, 71–72, 887 *A.*2d 728 (App.Div.2005) (affirming 75% remission where

defendant was no longer at large after less than six months, committed no new crime, and the surety did not provide supervision but did engage in effort to recapture).

Similarly, under the third starting point, the Guidelines presume that the defendant is not a fugitive at the time the remission motion is made but has committed a new crime after he is deemed a fugitive. *Id.* at 4. Under those circumstances, the corresponding percentage ranges under this section are significantly reduced to reflect the public injury caused by the commission of a new crime. *See, e.g., State v. Ramirez,* 378 *N.J.Super.* 355, 359–60, 875 *A.*2d 1025 (App.Div.2005) (finding no abuse of discretion for remittance of 16.7% in case where defendant no longer fugitive but committed new crime while at large, and surety provided no supervision or effort to recapture).

### B.

█ We recognize that our general principles concerning bail remission are not a perfect fit when a defendant is deported from the United States while on bail. Under the Guidelines, such a defendant would come within the first starting point that presumes that remission is not appropriate because the defendant essentially remains a fugitive. However, we have no doubt that the impossibility of securing the defendant's presence may play a role in assessing a surety's motion for remission and in the appropriate case, relief may be granted. *See generally, Taylor v. Taintor,* 83 *U.S.* (16 Wall.) 366, 369, 21 *L.Ed.* 287, 290 (1873) ("It is the settled law of this class of cases that the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of law.").

An example of the type of case that involved deportation in which remission was deemed viable is *State v. Poon,* 244 *N.J.Super.* 86, 581 *A.*2d 883 (App.Div.1990). In that case, the defendant was released from jail after his bail was reduced to $250,000.00. *Id.* at 91, 581 *A.*2d 883. Two days after the bail was posted, the defendant received notice of an immigration hearing requiring him

to answer allegations that he was in the United States illegally. *Ibid.* The immigration hearing was held prior to the disposition of the State criminal matter. *Id.* at 92, 581 *A.*2d 883. At the hearing, defense counsel informed the judge of the pending criminal proceedings in New Jersey. The defendant pled no contest and the judge ordered that the defendant be deported. *Ibid.* As a result, the defendant was unable to appear for trial in New Jersey, a bench warrant was issued, and his bail was forfeited. *Id.* at 93, 581 *A.*2d 883. The surety moved to set aside the forfeiture and the County cross-moved for judgment on the forfeiture. *Ibid.* The individual surety certified that the defendant was prevented from complying with the New Jersey order by an act of the federal government. Nevertheless, the trial court denied the surety's motion and ordered judgment in favor of the County. *Id.* at 94, 581 *A.*2d 883.

On appeal, the Appellate Division acknowledged that this was neither a case where the defendant incurred new criminal charges while out on bail, nor where the defendant was subsequently tried and jailed on charges pending at the time bail was set. *Id.* at 96, 581 *A.*2d 883. After reviewing the relevant caselaw, the panel rejected an automatic rule against remission solely because the defendant had not been returned. *Id.* at 101, 581 *A.*2d 883. Instead, the panel listed several factors trial courts should consider when assessing the appropriateness of remission, including (1) whether the indictment has been dismissed on grounds other than non-appearance; (2) whether the State seeks the return of the defendant for prosecution, as indicated in part by whether the State elects to extradite the defendant when it has the power to do so; (3) any prejudice to the State by the non-appearance in any co-defendant's trial; and (4) "[t]he efforts of the defendant and the surety to return defendant to this jurisdiction." *Id.* at 101–02, 581 *A.*2d 883. The panel found those factors were consistent with "the equitable principles announced in *Peace* and *Hyers.*" *Id.* at 103, 581 *A.*2d 883. Nevertheless, because the record was insufficient regarding the efforts of both parties to fight deportation and

secure the defendant's return to New Jersey, the panel remanded for further fact-finding. *Ibid.*

Several courts in other jurisdictions have approved of remission after the defendant has been deported. For example, in *People v. Alvarez,* 94 *Misc.*2d 334, 404 *N.Y.S.*2d 509 (Sup.Ct.1978), the defendant was indicted, and the court set bail at $1,500.00. The defendant surrendered his passport and a bond for his bail was filed. *Ibid.* The defendant was later taken into custody by immigration officials and was voluntarily deported. *Id.* at 510. The surety filed a motion for remission of bail shortly thereafter. *Id.* In addressing the motion to remit bail, the court found that the defendant's non-appearance was due to the action of the immigration authorities and was a sufficient excuse for granting the motion for exoneration of bail. *Ibid.; see also People v. Escalera,* 121 *P.*3d 306, 308 (Colo.Ct.App.2005) (noting that once defendant was deported, nothing surety could do to secure his return).

As evidenced by the foregoing cases and Guidelines, the decision to remit bail is fact-driven and involves the consideration of a multitude of factors. In most cases, remission of bail will not be appropriate unless the defendant has been returned to the jurisdiction of the court. Nevertheless, when deportation is the sole reason a defendant is unable to attend court, a crucial factor that the trial court should consider is whether the defendant was a fugitive from New Jersey at the time of deportation. That is, whether the defendant while compliant with the terms of his or her release, voluntarily attended a deportation hearing or was brought there by the authorities and thereafter was deported; or, whether the defendant was a fugitive when captured and then subsequently deported. If the former, then some degree of remission should be considered; if the latter, then remission generally should be denied.

C.

We turn now to consider the cases before us in light of the foregoing principles. For ease of presentation, we briefly summa-

rize the facts in each case. In *State v. Ventura*, the defendant was a fugitive and incarcerated in a Canadian facility when Safety filed its initial motion to vacate the forfeiture. When Bergen County learned of Ventura's location, it lodged a detainer with Canadian authorities. Because Safety's motion was premature, the trial court properly denied the motion without prejudice for Safety to renew its motions upon Ventura's return to the United States. Safety's second motion was filed after Canadian officials deported Ventura to the Dominican Republic, and Safety noted in its certification that the County indicated that it might initiate process to attempt to return Ventura to New Jersey.

We are satisfied that based on the record before it, the trial court did not abuse its discretion in denying Safety's motion to remit the bail in part or in whole. Pursuant to the Guidelines, because Ventura was essentially a fugitive when the motion was made, the denial of remission was appropriate. Indeed, there were also several unanswered questions concerning Ventura's deportation including whether Ventura was merely deported to the Dominican Republic as a free man, or whether he was incarcerated there. If incarcerated, what period of time would he have to serve in prison? Would the County attempt to return Ventura to New Jersey? Would the County dismiss the indictment? What was known is that Ventura was a fugitive when, in disregard of the County's detainer, the Canadian authorities deported him to the Dominican Republic. Simply stated, the brief record before the court was not sufficient to satisfy Safety's burden to establish that the interest of justice standard warranted remission of the forfeited funds. Consequently, we affirm the trial court's denial of remission to Safety.

Turning now to *State v. Granados*, in that case, Lexington filed its initial motion to vacate the bail forfeiture when it found that Granados was incarcerated in North Carolina. Shortly after the motion was filed, Middlesex County filed a detainer with local authorities in North Carolina. Despite the lodging of a detainer, Granados was deported to Colombia. Once Lexington realized

that Granados had been deported, it filed a second motion for remission. Lexington argues that a bail forfeiture should be set aside when a defendant is deported to another country and cannot be returned to court. It urges that because both itself and the State are powerless to prevent deportation, it is inequitable to insist upon total bail forfeiture.

Our review of the record satisfies us that the trial court did not abuse its discretion in denying remission. Similar to Ventura, Granados was a fugitive when captured and eventually deported. In those circumstances, the Guidelines provide for a presumption against remission. Moreover, the trial court took a much broader view of the equities than Lexington claims. As noted by the Appellate Division panel, "the trial court did not enact a per se rule in denying the motion, solely because the defendant had been deported, but rather, considered the equities under the circumstances." The trial court considered the corporate status and credited the effort that Lexington undertook to supervise Granados while released on bail until she failed to report in October 2004. The trial court also acknowledged Lexington's diligent efforts in trying to locate Granados. Nevertheless, in denying relief, the trial court's decision was heavily influenced by Lexington's failure to intervene or to monitor the deportation proceeding. *Id.* at 10–11.

Despite the trial court's analysis, Lexington urges that *Poon* supports it position. We do not agree. There are several important facts that are lacking here that were present in *Poon*. For example, the defendant in *Poon, supra,* was not a fugitive when he voluntarily attended the deportation hearing resulting in his deportation. 244 *N.J.Super.* at 92, 581 *A.*2d 883. In the present case, Granados was not only arrested on new charges while released on bail, she was also a fugitive from New Jersey when she was deported. Further, unlike the defendant in *Poon,* who was deported prior to the date of his court appearance in New Jersey, Granados missed her court appearance in New Jersey and was deported shortly thereafter. Indeed, the State acknowledged that if Granados had been deported prior to her scheduled court

appearance, then her absence would have been justified by virtue of the deportation proceeding.

A surety's essential responsibility is to guarantee not only the defendant's appearance at the scheduled court proceedings, but that if the defendant is deported to make every effort to reapprehend the defendant. *See generally, Mercado, supra,* 329 *N.J.Super.* at 271, 747 *A.2d* 785 ("[I]f a surety seeks a partial or total remission of a forfeiture of bail, it bears a heavy burden to show that it has satisfied its essential obligation under the recognizance to secure the defendant's return to custody, and in the absence of this showing, the trial court may determine that the forfeiture should stand."); *Poon, supra,* 244 *N.J.Super.* at 101, 581 *A.2d* 883 ("[T]he precedents reflect that the defendant has always returned to the state, voluntarily or involuntary, before remission has been ordered in whole or in part."); *Hyers, supra,* 122 *N.J.Super.* at 180, 299 *A.2d* 748 (identifying one factor to assess remission as "the time elapsed between the date ordered for the appearance of defendant and his return to court"). Because Granados had fled New Jersey, incurred new charges, and was deported, she was essentially a fugitive. Moreover, just as in *Ventura,* there were many questions that remained unanswered. For example, would the County attempt to return Granados to New Jersey, and if so, would the surety assist in that endeavor? Would the County continue to press the indictment? Or, would it move to dismiss it? Based on the record before the trial court, we find no abuse of discretion in the denial of the motion for remission.

## VI.

The separate judgments of the Appellate Division in *State v. Ventura* and *State v. Granados* are affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.