**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5330-14T1
           A-5331-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TARA BLAIR and RAPID RELEASE[1]
BAIL BONDS,

    Defendants,

and

FINANCIAL CASUALTY & SURETY,

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FRANK PARISI and RAPID RELEASE
BAIL BONDS,

    Defendants,

_____

[1] Rapid Release Bail Bonds was dismissed from both appeals without
prejudice because it filed for bankruptcy.

and

BANKERS INSURANCE COMPANY,

    Defendant-Appellant.

_____

Submitted December 13, 2016 — Decided May 22, 2017

Before Judges Suter and Guadagno.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 13-11-2976 and 14-10-2824.

Richard R. Capone, attorney for appellants Financial Casualty & Surety and Bankers Insurance Company.

Berry, Sahradnik, Kotzas & Benson, P.C., attorneys for respondent (Mathew B. Thompson, on the briefs).

PER CURIAM

    In <u>State v. Tara Blair</u>, No. A-5330-14, defendant Financial Casualty & Surety (Financial) appeals a July 8, 2015 order, which required Financial to pay $1000 of the $10,000 bail bond it issued for defendant Tara Blair (Blair). In <u>State v. Parisi</u>, No. A-5331-14, defendant Bankers Insurance Company (Bankers) appeals an order of July 8, 2015, which required it to pay $1000 of the $2500 bond

it issued for defendant Frank Parisi (Parisi).[2]  We affirm both orders.

I.

A.

In 2013, following Blair's arrest, Financial posted a $10,000 bail recognizance bond, as corporate surety, through defendant Rapid Release Bail Bonds (Rapid Release).  When Blair did not appear in court on February 24, 2015, as required, a bench warrant was issued for her arrest and bail was forfeited.  Notice of the forfeiture was received by Financial on March 7, 2015.  Thirty-five days after her failure to appear, Blair was arrested by local law enforcement authorities.

Financial filed a motion to remit the bail bond forfeiture and for exoneration.  It contended that remission on the bond should be "substantial," suggesting a payment of "around $500," which would be a ninety-five percent remission.  Financial alleged that Rapid Release had maintained close supervision of Blair from 2013.  Its records documented twenty-three contacts with Blair prior to her failure to appear in February 2015, and she had "checked-in" three additional times.  When it became aware of Blair's non-appearance, Rapid Release spoke with her once about

---

[2]  We have consolidated these back-to-back appeals solely for purposes of this opinion.

A-5330-14T1

trying to reinstate the bond, left her a message once, and hired a bounty hunter, who "went out" to Blair's house four times and to her mother's.[3]  Blair called Rapid Response once.  The State contended these efforts were not "effective" or "substantial" enough to warrant a ninety-five percent remission of the bail amount.

The trial court found that although there had been "substantial supervision" of Blair while she was out on bail, once she failed to appear in court, there were "minimal efforts to recapture" her and that "local law enforcement was able to do what the [s]urety wasn't able to do."  On July 8, 2015, the trial court ordered Financial to pay $1000 to be "distributed proportionally between the State . . . and the County of Ocean."[4]  Then, upon payment, the bail forfeiture "shall be vacated and the bond discharged."  Thus, the court ordered a ninety percent remission of the bail amount instead of the requested ninety-five percent remission.

Financial appealed the July 8, 2015 order, contending the court erred by not considering the "effectiveness" of its initial efforts to capture Blair or the short amount of time that Blair

---

[3] There was one additional contact on March 4, but this was before notice was received about the non-appearance.

[4] The order mistakenly references Bankers instead of Financial.

was a fugitive from justice.  The trial court stayed payment of the forfeited amount pending appeal.

## B.

On December 31, 2014, Bankers posted a $2500 bail bond, through Rapid Release, for Parisi.  When Parisi failed to appear on February 24, 2015 at a pre-arraignment conference, a bench warrant was issued for his arrest and his bail was forfeited.  Up to this point, Rapid Release had called Parisi only one time, although Parisi also had "checked in," according to Rapid Release's log, on three occasions.

Notice of the forfeiture was received by Bankers on March 1, 2015.  Bankers called Parisi twice and left a message.  It hired a bounty hunter, who on three occasions tried to locate Parisi at home or through the bond's co-signer.  Parisi returned Bankers call on March 18 and 24 to advise he would not be appearing in court and taunted that they would not be able to locate him.  The bounty hunter made only one more visit to Parisi's home and the co-signer on the bond, and left one phone message for Parisi.  Parisi was arrested by local law enforcement officers on April 3, 2015.

Bankers filed a motion to remit the forfeiture.  The trial court ordered that "there should be substantial remission, 40 percent, therefore the State should be paid a thousand dollars to

reimburse them for their cost." The July 8, 2015 order required a $1000 payment by Bankers. Bankers appeals that order, alleging the court abused its discretion by not giving adequate consideration to its efforts or the short period of time that Parisi was at large.

## II.

We review these appeals under an abuse of discretion standard. "Where our review of the record 'leaves us with the definite conviction that the judge went so wide of the mark that a mistake must have been made,' we may 'appraise the record as if we were deciding the matter at inception and make our own findings and conclusions.'" C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div.) (quoting Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App. Div.), aff'd, 78 N.J. 320 (1978)), certif. denied, 117 N.J. 165 (1989).

When these cases were decided, release of a criminal defendant was based upon satisfying the amount of bail that had been set by the court.[5] R. 3:26-1(a). The purpose of bail is to "ensure [the defendant's] presence in court when required." State v. Ventura, 196 N.J. 203, 212 (2008) (quoting R. 3:26-1(a)). Under the

---

[5] Both of these cases arose prior to the new Bail Reform Act, N.J.S.A. 2A:162-15 to -26, where currently the court's decision to detain an individual following arrest, or to release based on conditions, is guided by new statutory standards.

"recognizance" signed by a criminal defendant, "appearance at all stages of the proceedings" is required and should the defendant fail to appear, bail is forfeited by the court "on its own motion." Ibid. (quoting R. 3:26-4(a); R. 3:26-6(a)).

Forfeiture of bail can be vacated "in whole or in part, if its enforcement is not required in the interest of justice upon such conditions as [the court] imposes." Id. at 213 (alteration in original) (quoting R. 3:26-6(b)). The amount of the remission is left to the sound discretion of the court. See State v. Peace, 63 N.J. 127, 129 (1973); State v. Ruccatano, 388 N.J. Super. 620, 627 (App. Div. 2006); State v. de la Hoya, 359 N.J. Super. 194, 198 (App. Div. 2003); State v. Mercado, 329 N.J. Super. 265, 271 (App. Div. 2000); State v. Hyers, 122 N.J. Super. 177, 180 (App. Div. 1973).

"[T]he Administrative Office of the Courts [also] has developed Guidelines to assist in bail remission proceedings." Ventura, supra, 196 N.J. at 215. See Supplement to Directive # 13-04, Bail-Further Revised Remittitur Guidelines (Nov. 12, 2008) [hereinafter Guidelines]. The Guidelines consider whether the criminal defendant is a fugitive at the time the remission motion is made, whether a new crime has been committed in the interim and the amount of time while at-large, and they make recommendations about the percentage of bail to be remitted. See ibid.

The burden of proving that remission of the bail forfeiture is necessary rests with the corporate surety.  Mercado, supra, 329 N.J. Super. at 269-70 (citing State v. Childs, 208 N.J. Super. 61, 64 (App. Div.), certif. denied, 104 N.J. 430 (1986)).  "[T]he decision to remit bail is fact-driven and involves the consideration of a multitude of factors."  Ventura, supra, 196 N.J. at 218.[6]

---

[6] These include,

> 1. Whether the surety has made a reasonable effort under the circumstances to effect the recapture of the fugitive defendant.
>
> 2. Whether the applicant is a commercial bondsman.
>
> 3. The surety's supervision of the defendant while he or she was released on bail.
>
> 4. The length of time the defendant is a fugitive.
>
> 5. The prejudice to the State, and the expense incurred by the State, as a result of the fugitive's nonappearance, recapture and enforcement of the forfeiture.
>
> 6. Whether the reimbursement of the State's expenses will adequately satisfy the interests of justice. The detriment to the State also includes the intangible element of injury to the public interest where a defendant deliberately fails to make an appearance in a criminal case.

We have held that "[t]here is an intangible element of injury to the public interest in almost any case where a defendant deliberately fails to make an appearance in a criminal case." Mercado, supra, 329 N.J. Super. at 270 (alteration in original) (quoting Peace, supra, 63 N.J. at 129). However, there are also policy concerns about providing an incentive to the surety to "take active and reasonable steps to recapture a fugitive defendant" without discouraging "their willingness to post bail." Guidelines, supra, at 1. Nevertheless, "the surety is obligated to locate, apprehend and return the defendant to custody." Mercado, supra, 329 N.J. Super. at 271 (citation omitted).

## III.

### A.

We discern no abuse of discretion by the trial judge in granting Financial a ninety percent remission of the forfeited bail, rather than the requested ninety-five percent. Under the Guidelines, where a defendant is not a fugitive, did not commit a

---

7. The defendant's commission of another crime while a fugitive.

8. The amount of the posted bail. In determining the amount of a partial remission, the court should take into account not only an appropriate percentage of the bail but also its amount.

[Ruccatano, supra, 388 N.J. Super. at 624.]

new crime while a fugitive, and the period when the defendant was at large was less than six months, all facts that apply in the case of Blair, the Guidelines contemplate a seventy-five percent remission of the forfeited bail if the surety provided "close supervision" of the defendant, but did not engage in "immediate substantial efforts" to recapture the defendant.  Guidelines, supra, at 7.  However, where there also is immediate substantial effort to recapture the defendant, the remission contemplated under the Guidelines is ninety-five percent.  Ibid.

"[T]he decision to remit and the amount of the remission lies within the equitable discretion of the court to be exercised in the public interest."  de la Hoya, supra, 359 N.J. Super. at 198 (citations omitted).  "[T]he Guidelines were only intended to provide 'a starting point when determining whether to grant a remission, and, if so, the amount to remit.'  The facts of a particular case 'will determine whether the amount to remit is increased or decreased.'  Thus, flexibility, rather than rigidity, is the governing principle."  Ruccantano, supra, 388 N.J. Super. at 627 (quoting Directive # 13-04, Remittitur Guidelines—Attachment F, at 2 (Nov. 17, 2004)).

The judge found that Financial had made reasonable efforts at supervision during the period when Blair was released on bail, but did not make immediate substantial efforts at recapture.  From

10

the time that Financial was notified of the forfeiture, it hired a bounty hunter, made two calls and received a call from Blair. The call to Blair on March 8 and from Blair on March 16, both of which were after Financial was aware of the forfeiture, did not result in her recapture or surrender because Financial was "pursuing an administrative solution first" by trying to have the bail reinstated.

Financial does not explain whether this "solution" was unsuccessful or when, or in light of this, what other efforts it made to recapture Blair, aside from hiring the bounty hunter, while it apparently remained in telephone contact with her. Financial had the burden here. The judge considered these efforts, and was aware of the time Blair had been at large. We simply cannot say that the judge's exercise of discretion was "so wide of the mark" in concluding not to remit an extra five percent on a $10,000 bail as to require reversal, especially where Financial's immediate efforts had as much or more to do with reinstatement of the bail as with recapture.

## B.

Similarly, in the <u>Parisi</u> case, the trial court did not abuse its discretion in remitting by sixty percent the forfeited bail of $2500, and requiring a payment of $1000. Here, the record supported a conclusion that Bankers provided only minimal

A-5330-14T1

supervision of defendant while out on bail. Although defendant checked-in three times in ninety days, Rapid Release called but once and left a message. Then after the bail was forfeited, it hired a bounty hunter and made two calls. The call log shows that by March 18, defendant had no intention of surrendering and yet the bounty hunter went out only one more day and made one call to the co-signer. Under the Guidelines, the remission could have been substantially less as this record hardly supported "close supervision" or "immediate substantial efforts to recapture."

We affirm both July 8, 2015 orders.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5330-14T1