**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5076-14T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

MIGUEL Y. TINEO-PAULINO,

    Defendant,

and

FIRST INDEMNITY OF AMERICA
INSURANCE COMPANY,

    Surety-Respondent,

and

BLAZE BAIL BONDS, INC.,

    Bondsman.

---

        Argued March 16, 2017 — Decided June 14, 2017

        Before Judges Alvarez and Manahan.

        On appeal from the Superior Court of New
        Jersey, Law Division, Monmouth County,
        Indictment No. 09-01-0178.

        Malcolm V. Carton argued the cause for
        appellant.

Samuel M. Silver argued the cause for respondent.

PER CURIAM

On March 6, 2015, a Law Division judge ordered the return of $75,000 of a $100,000 bond to Blaze Bail Bonds, Inc. (Blaze). The bond was posted on behalf of defendant Miguel Tineo-Paulino. The judge also "denied without prejudice" the State's motion for a writ of execution on the previously entered default judgment on the full amount of the bond. The State sought reconsideration, which was denied on May 29, 2015. This appeal followed. We now reverse and remand as to the judge's calculations under Remittitur Guidelines Schedule 3, but affirm his ruling regarding counsel fees and the application of the statute of limitation found in N.J.S.A. 2A:162-8.

The matter has a convoluted procedural history. Blaze posted the bond for defendant on December 7, 2008, securing his release. Defendant has not returned to court since. As we stated in our prior decision regarding this matter, "[n]o contacts with, or supervision of, defendant took place between [December 7, 2008] and defendant's failure to appear at a status conference seven months later, on July 7, 2009. Bail was then forfeited, and a bench warrant issued." State v. Tineo-Paulino, No. A-2547-12 (App. Div. Apr. 2, 2014) (slip op. at 2).

2

On October 9, 2009, a default judgment issued against the surety for $100,000. Id. at 2. Thereafter, Blaze filed an application to vacate the forfeiture, for exoneration, and discharge, producing a death certificate from the Dominican Republic along with an apostille certifying to the document's veracity. Id. at 2-3. The judge vacated the prior judgment and related orders. Id. at 3.

County counsel later learned that not only was defendant alive, he had actually been arrested on new charges by the United States Drug Enforcement Administration (DEA). Id. at 3-4. On November 14, 2012, the judge again forfeited bail because Blaze never produced defendant in court, defendant was charged with a new offense, and was clearly still alive. Id. at 4-6. The judge also ruled that Blaze was not entitled to any further relief until such time as defendant was produced. Id. at 6. Blaze appealed, and we affirmed on April 2, 2014. Id. at 2.

On April 14, 2014, the surety filed a second motion in the trial court to vacate the judgment, exonerate bail, and discharge the bail bond. The State sent the surety a Rule 1:4-8 letter on May 7, 2014, requesting that the motion be withdrawn as frivolous and putting Blaze on notice that it would seek counsel fees if the application was not withdrawn. See R. 1:4-8. After its

application was denied, the surety filed a second notice of appeal, withdrawn three months later.

The State then filed an unsuccessful motion for counsel fees. A week after that decision, the criminal charges pending against defendant were dismissed on October 31, 2014. The dismissal was entered by a different judge who was completely unaware of the matter's prior history. County counsel's office, representing the State only as to the bail litigation, was not informed of the dismissal until after Blaze's counsel was advised in the ordinary course of the discharge. The Monmouth County assistant prosecutor who dismissed the indictment, and discharged the bail, explained the dismissal as the result of defendant pending a federal sentence in the Eastern District of New York. He said, "[f]urther prosecution of these charges would serve no purpose."

The State's subsequent December 16, 2014 motion for a writ of execution and counsel fees was based on the entry of the prior order of default. The State also contended that the surety's second application to vacate the judgment, in light of the prior failure to appear and the outcome of the appeal, had no basis in law or fact.

On March 6, 2015, the judge issued a written opinion denying the State's motions for a writ of execution and counsel fees. The basis for denial was that the State failed to notify the surety

in the frivolous litigation letter that it had twenty-eight days in which to withdraw its April 14, 2014 motion.

The judge wrote:

> Here, once the State requested dismissal of all charges against the defendant, his presence in court was no longer required once the judgment of dismissal was entered on October 31, 2014. There was no reason to continue defendant's bail after his charges were dismissed. For this reason, the bail was returned to the surety, yet the surety is not entitled to complete exoneration and remission. If the surety fails to pay the amount of remission, at that point the State would be entitled to execute on that amount.

The judge then analyzed the factors provided in State v. Hyers, 122 N.J. Super. 177, 180 (App. Div. 1973) regarding the efforts Blaze undertook to recapture defendant.

The judge acknowledged that Blaze engaged in no supervision, and that defendant was able to flee to the Dominican Republic (factor three). After defendant's nonappearance, Blaze hired a private investigator (factor one) who reached out to persons in the Dominican Republic. Defendant was a fugitive for over five years until he was taken into federal custody, at which point the surety "lost any and all ability to produce defendant in this [c]ourt" (factor four). The State incurred significant legal fees but will suffer no prejudice because defendant's charges were ultimately dismissed (factor five). Regarding whether

reimbursement of the State's expenses would adequately satisfy the interest of justice, the court opined that since defendant fled and never appeared in this court, the "intangible element of injury weighs heavily against allowing the surety complete remission and exoneration" (factor six), and defendant committed other crimes while he was a fugitive (factor seven). Factor two was undisputed and of no effect in the calculation since the surety was a commercial bondsman.

Having reviewed the factors, the judge applied Remission Schedule 3 under the Remittitur Guidelines (the Guidelines). See Administrative Directive No. 13-04, Revision to Forms and Procedures Governing Bail and Bail Forfeitures[1] (Nov. 17, 2014), http://www.judiciary.state.nj.us/directive/criminal/dir_13_04.pdf. He said:

> In this case, the "special reason" is that the surety spent a considerable effort to "prove" that defendant was dead. In fact, the defendant was alive and committing serious crimes which resulted in a guilty plea in federal court in the Eastern District of New York. The surety should not, in equity, be rewarded by such conduct. Nor has the surety offered any evidence to explain how it obtained and filed a false death certificate and even worse, a false "apostille" which purported to authenticate defendant's demise. These documents induced this [c]ourt to grant

---

[1] See also Revised Bail Remittitur Guidelines, Supplement to Directive No. 13-04 (Oct. 9, 2007), http://www.judiciary.state.nj.us/directive/criminal/supp_dir_13_04.pdf.

full exoneration to the surety in December 2010. The surety was not entitled to that relief as defendant was alive. Remission schedule 3 suggests that between 0 and 10 percent should be remitted. Here, the defendant was apprehended and in the custody of the federal authorities, but had committed other offenses while on bail. The State chose not to lodge a detainer but instead requested these charges be dismissed so the surety will never be called upon to produce the defendant. Thus, the surety must remit 25% or $25,000.00.

In support of its application for reconsideration, the State contended that Remission Schedule 3 was inapplicable. Even if applicable, the remission table pursuant to Schedule 3 allowed only zero to ten percent to be paid to the bond company, because it did not supervise, failed to engage in immediate efforts to recapture, and the time defendant was at large was more than twelve months.

Finding the State had not identified law or facts which the court had overlooked or about which the court was mistaken pursuant to Rule 4:49-2, the application was denied. The court for the first time ruled on the State's new argument that the surety was out of time to apply for the return of its bond under N.J.S.A. 2A:162-8 because:

> under these circumstances there is a doctrine of equitable tolling because remission of bail is an equitable proceeding and first of all the statute was not raised during the various voluminous motions. But even if it were, the

provisions of equitable tolling apply in this case.

As to counsel fees, the judge reiterated that <u>Rule</u> 1:4-8(b)(1) required that the moving party advise of the twenty-eight day time period in which the motion can be withdrawn, and that the State failed to do so.  This appeal follows.

The State raises the following points for our consideration:

> POINT I
> REMISSION OF BAIL IS INAPPROPRIATE WHERE THE FUNDAMENTAL CONDITION OF BAIL, PRODUCTION OF THE DEFENDANT, WAS NEVER MET AND THERE IS NOTHING IN THE RECORD TO INDICATE THAT THE DEFENDANT WAS IN CUSTODY OR WAS IN CUSTODY ANYWHERE OR AT ANY TIME AND A JUDGMENT OF FORFEITURE HAS NEVER BEEN VACATED.
>
> POINT II
> EVEN UNDER BAIL REMISSION SCHEDULE 3, NOTHING POINTS TO A REMISSION OF OVER 60% OF BAIL AND CERTAINLY NOT THE 75% ORDERED BY THE COURT BELOW.
>
> POINT III
> THE INTANGIBLE HARM TO THE COMMUNITY INFLICTED BECAUSE OF THE DEFENDANT'S FAILURE TO APPEAR FURTHER WARRANTS FORFEITURE OF THE BAIL AND DENIAL OF REMISSION.
>
> POINT IV
> THE SURETY IS OUT OF TIME TO APPLY FOR A RETURN ON MONIES AS APP[LIC]ATIONS FOR A RETURN OF MONIES PAID SHALL BE MADE TO THE COURT WITHIN[] FOUR YEARS AFTER THE RECOGNIZANCE SHALL HAVE BEEN DECLARED FORFEITED, <u>N.J.S.A.</u> 2A:162-8.
>
> POINT V
> THE DECISION TO DENY COUNSEL FEES WAS BASED ON A DE MINIMUS AND TECHNICAL VIOLATION AND

IN LIGHT OF THE ONGOING EFFORTS OF THE STATE TO COLLECT THE BAIL MONEY, IT SHOULD BE AWARDED COUNSEL FEES.

## I.

"The matter of remission lies essentially in judicial discretion." State v. Peace, 63 N.J. 127, 129 (1973). We focus our discussion on Bail Remission Schedule 3, the reason Blaze is not out of time to seek remission, and the reason the State is not entitled to counsel fees under Rule 1:4-8(b)(1).

## II.

If a person admitted to bail fails to appear in court, "the court on its own motion shall order forfeiture of the bail[.]" R. 3:26-6. However, "[t]he court may, either before or after the entry of judgment, direct that an order of forfeiture or judgment be set aside, in whole or in part, if its enforcement is not required in the interest of justice . . . ." R. 3:26-6(b). Once the forfeiture has been set aside or remission ordered, "the court shall exonerate the obligors and release any bail." R. 3:26-7.

Bail was forfeited and a default judgment entered in favor of the State once defendant failed to appear and Blaze failed to produce him in 2009. Since that time, Blaze has not produced defendant, and once he was in federal custody, Blaze could not produce him.

A-5076-14T1

To further complicate the analysis, the indictment was dismissed, and that judge, unaware of this history, in accord with routine standard protocol, discharged the bail bond. Afterwards, the State moved for a writ of execution on the default judgment which predated the dismissal and discharge of the bail, arguing that it remained unaffected. The court disagreed, ordering a more substantial remission than permitted under Schedule 3.

"[A] motion for remission of forfeited bail is assessed in a fact-sensitive manner, weighing a multitude of factors outlined in State v. Hyers, 122 N.J. Super. 177, 180 (App. Div. 1973), and its progeny." State v. Ventura, 196 N.J. 203, 206 (2008). The Hyers factors include the following:

> (a) whether the applicant is a commercial bondsman; (b) the bondsman's supervision, if any, of defendant during the time of his release; (c) the bondsman's efforts to insure the return of the fugitive; (d) the time elapsed between the date ordered for the appearance of defendant and his return to court; (e) the prejudice, if any, to the State because of the absence of defendant; (f) the expenses incurred by the State by reason of the default in appearance, the recapture of the fugitive and the enforcement of the forfeiture; [and] (g) whether reimbursement of the expenses incurred in (f) will adequately satisfy the interests of justice.
>
> [Ventura, supra, 196 N.J. at 213 (quoting Hyers, supra, 122 N.J. Super. at 180).]

Other factors have been considered such as whether the surety's efforts helped secure the defendant, State v. Mercado, 329 N.J. Super. 265, 271 (App. Div. 2000), the surety's steps in recapturing the defendant, and the amount of the bail, State v. de la Hoya, 359 N.J. Super. 194, 199 (App. Div. 1999). Ventura, supra, 196 N.J. at 213-14.

> However, the court's primary focus, especially when the defendant has remained a fugitive for a significant period of time, should be upon the surety's efforts to secure the defendant's return, rather than upon the expenses incurred by the State as a result of the defendant's failure to appear or the prejudice to the State's case caused by the defendant's absence.
>
> [Mercado, supra, 329 N.J. Super. at 271.]

Moreover, "[a] party seeking to set aside or remit a forfeiture bears the burden of proving that 'it would be inequitable to insist upon forfeiture and that forfeiture is not required in the public interest.'" Id. at 269-70 (quoting State v. Childs, 208 N.J. Super. 61, 64 (App. Div.), certif. denied, 104 N.J. 430 (1986)). "A crucial factor in every bail remission case is whether the defendant remains a fugitive." Ventura, supra, 196 N.J. at 206.

In this case, Blaze did not supervise defendant whatsoever, he was able to flee to a foreign country, and while there committed a new offense. It would therefore seem that the "minimal remission," not the "substantial remission" tables applied because

11

"the surety provided minimal or no supervision . . . and failed to engage in immediate substantial efforts to recapture the defendant." Even if Blaze was duped by persons unknown into believing defendant had died while in the Dominican Republic, and Blaze was not implicated in the deception, Blaze did not engage in immediate substantial efforts to recapture defendant.

Careful balancing is necessary to offset the harm to the public resulting from defendant's failure to appear against the State's unexplained decision to merely dismiss the charges. Regardless of these equitable considerations, it appears on this record that only minimal remission is appropriate. It is difficult to equate "immediate substantial efforts to recapture the defendant" with efforts to prove he was dead. Therefore, even the "Partial Remission" portion of Schedule 3 does not seem to us applicable. Certainly the "Substantial Remission" section is not applicable since Blaze did not supervise defendant once he was released on bail and he was able to flee the country.

Factor six requires assessment of whether reimbursement of the State's expenses will adequately satisfy the interests of justice. State v. Harmon, 361 N.J. Super. 250, 255 (App. Div. 2003). However, "[t]he detriment to the State also includes . . . an unquantified 'intangible element of injury to the public interest in almost any case where a defendant deliberatively fails

to make an appearance in a criminal case.'" Id. at 255 (quoting Peace, supra, 63 N.J. at 129). After considering defendant's flight from this jurisdiction, the judge properly found that "[t]his intangible element of injury weighs heavily against allowing the surety complete remission and exoneration." The judge weighed factor seven against the surety in similar fashion, as defendant had additional charges brought against him while he was a fugitive.

The "immediacy of the surety's efforts should ordinarily be measured from the time the surety is informed of the warrant/forfeiture, without reference to when it would or should have learned of that fact if there had been proper supervision." State v. Toscano, 389 N.J. Super. 366, 374 (App. Div. 2007) (quoting State v. Ruccatano, 388 N.J. Super. 620, 626 (App. Div. 2006)). In order for the efforts to be "substantial," "the efforts must be reasonable under the circumstances of the case and 'effective.'" Ibid. (quoting Ruccatano, supra, 388 N.J. Super. at 627-29). The surety made limited efforts — succeeding only in producing a fictional death certificate.

We therefore reverse the trial court's calculation of the appropriate remission as it exceeds the maximum under Schedule 3, and does not adequately address the surety's complete failure to supervise or engage in any efforts to return defendant to this

13

jurisdiction. It is clear the judge's factual findings were correct, and his assessment of each factor was also correct. But his ultimate decision regarding remission calculated by the schedule he applied appears to be a mistake of law, not a mistaken exercise of discretion.

III.

We do not agree with the State that the surety is out of time in seeking a return of the bail bond. The State contends that since the original forfeiture took place on July 7, 2009, and the default judgment entered on October 9, 2009, N.J.S.A. 2A:162-8 applies, and effectively bars the surety from relief. That statute reads:

> When any court which has ordered or shall order the forfeiture of a recognizance, the amount whereof has been or shall be paid into the county treasury of any county in accordance with law, shall thereafter, in its discretion, order the return of the moneys so paid upon the forfeited recognizance . . . . [a]pplication for a return of moneys so paid shall be made to the court within 4 years after the recognizance shall have been declared forfeited.
>
> [N.J.S.A. 2A:162-8.]

"The time limitation [under N.J.S.A. 2A:162-8] is directed to the forfeiture, not to any judgment which a court may subsequently enter." State v. Singletary, 170 N.J. Super. 454, 460 (Law Div. 1979). The surety's July 2009 forfeiture was vacated

14

on December 22, 2010. The forfeiture was then reinstated on November 14, 2012. This order was stayed pending appeal, and later affirmed on April 2, 2014. Tineo-Paulino, supra, slip op. at 12. Thus, the surety was not out of time to receive a return of its bond as it began to seek the return of the funds two years after the 2012 forfeiture.

IV.

Finally, the State also contends the trial court erred in denying the motion for counsel fees. While conceding it did not include the twenty-eight-day time frame found in Rule 1:4-8(b)(1), the State does not agree that omission is consequential.

The decision to award counsel fees pursuant to the frivolous litigation statute rests within the sound discretion of the trial court. See Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 83-84 (App. Div. 2004), certif. denied, 183 N.J. 213 (2005). Under the frivolous litigation statute:

> A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
> [N.J.S.A. 2A:15-59.1(a)(1).]

A-5076-14T1

In order for a motion to be frivolous it must have been made in "bad faith, solely for the purpose of harassment, delay or malicious injury" or "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b).

Rule 1:4-8(b)(1) provides:

> An application for sanctions under this rule shall be by motion made separately from other applications and shall describe the specific conduct alleged to have violated this rule. No such motion shall be filed unless it includes a certification that the applicant served written notice and demand pursuant to [Rule] 1:5-2 to the attorney or pro se party who signed or filed the paper objected to. The certification shall have annexed a copy of that notice and demand, which shall (i) state that the paper is believed to violate the provisions of this rule, (ii) set forth the basis for that belief with specificity, (iii) include a demand that the paper be withdrawn, and (iv) give notice, except as otherwise provided herein, that an application for sanctions will be made within a reasonable time thereafter if the offending paper is not withdrawn within 28 days of service of the written demand.

"Rule 1:4-8(b)(1) requires a 'motion made separately from other applications' and notice to the adversary of its right to take action to withdraw the objectionable pleading within a twenty-eight-day period. Strict compliance is a prerequisite to

recovery."  State v. Franklin Sav+. Account, 389 N.J. Super. 272, 281 (App. Div. 2006).

In light of the unusual circumstances and lengthy history of the dispute, and the fact that the surety's motion was clearly not made in bad faith or with the purpose to harass or delay, but in a continuing years-long effort to recover a substantial sum, the State is not entitled to counsel fees pursuant to the rule.  The surety had a colorable basis for seeking the return of funds.  That position was bolstered when the indictment was dismissed.  Since we conclude that the application was not made in bad faith, although a different reason from the trial judge's for the denial of the claim, we affirm.  See State v. Jones, 445 N.J. Super. 555, 560 n.4 (App. Div. 2016) (citation omitted) ("[A] correct result predicated upon an incorrect basis does not preclude an affirmance of [a] ruling.").

Reversed and remanded for reconsideration of the remission amount, otherwise affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5076-14T1